## STATE v. NELLIE COLLIS STREET.

(Filed 23 March, 1955.)

**1. Criminal Law § 53d: Trial § 31b—**

G.S. 1-180 requires the court, in both criminal and civil actions, to de-clare and explain the law arising on the evidence in the particular case and not upon a set of hypothetical facts.

**2. Homicide § 27f—**

In this case defendant killed deceased in her home after she had re-quested him to leave, claiming that she killed in self-defense. The court, in illustrating what is meant by real and apparent danger, charged that if "somebody jumps out in the dark and flashes a pistol on you and says he is going to kill you, you have the right to protect yourself and kill him," notwithstanding the pistol may not be loaded or could not be fired. *Held:* The use of hypothetical facts wholly unrelated to the facts in evidence was prejudicial.

**3. Same—**

The court in charging upon the right of a person in his home to order an intruder to leave the premises and to use such force as is reasonably necessary to cause the intruder to leave, stated "On the other hand one cannot use the excessive force of taking human life." *Held:* The charge was prejudicial, the question for the jury being whether under all of the circumstances defendant had reasonable cause to believe and did believe that the force used was necessary to protect herself from impending danger or great bodily harm from the assault or threatened assault which defend-ant contended deceased was making upon her.

**4. Homicide § 27b—**

An instruction susceptible to the interpretation that if the jury found that defendant killed deceased with a deadly weapon, but were satisfied

from defendant's evidence that in shooting the deceased defendant was justified and did so without malice, defendant would be guilty of manslaughter, must be held for error, since if defendant was justified in shooting the deceased and did so without malice, defendant would be entitled to a verdict of not guilty.

**5. Homicide § 16—**

The intentional killing of a human being with a deadly weapon raises the presumptions that the killing was unlawful and was done with malice.

**6. Homicide § 3—**

An unlawful killing of a human being with malice and with premeditation and deliberation is murder in the first degree.

**7. Homicide § 5—**

The unlawful killing of a human being with malice but without premeditation and deliberation is murder in the second degree.

**8. Homicide § 7—**

The unlawful killing of a human being without malice and without premeditation and deliberation is manslaughter.

BARNHILL, C. J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Pless, J.,* September Term, 1954, of MITCHELL.

Criminal prosecution tried upon an indictment charging the defendant with the murder of one Billy Cooper.

The solicitor announced that the State would not ask for a verdict of murder in the first degree but would ask for a verdict of murder in the second degree, or manslaughter, as the evidence might warrant.

The State's evidence tends to show that around eight o'clock on the evening of 9 March, 1954, B. M. Peterson, B. M. Peterson, Jr., and Billy Cooper went to the home of the defendant at Green Mountain in Mitchell County, where she lived with her half-sister, Cora Collis. Mary Garland and Aileen Garland came to the defendant's home shortly after Cooper and his friends arrived. The Petersons and Cooper were drinking. When they entered the home of the defendant, Billy Cooper was carrying a half-gallon jar which contained white liquor. Billy Cooper wanted some home-brew but the defendant did not have any. He and his two associates then proceeded to take two or three additional drinks of the white liquor. They were noisy and acted like they were drunk. No other person took a drink. One of the State's witnesses testified that the defendant "opened the door and asked them to leave nice; they didn't go." She then went to her bedroom. B. M. Peterson, Jr., testified that Billy Cooper began gritting his teeth and the defendant jumped up and said, "Get that damned s.o.b. out of here or I will kill him." The evidence further tends

to show that instead of leaving, the deceased followed the defendant to her bedroom and stood with his hand on the door, facing the bedroom, and said he was going out, "but to talk nice to him." One of the Petersons told Cooper "to come back and behave himself." The deceased remained at the door of the bedroom for probably as much as five minutes before the shot was fired. He was twenty-eight years old and weighed somewhere between 170 and 200 pounds.

The defendant is a widow sixty-five years of age, who lived at her home with her half-sister, Cora Collis, at the time the two Petersons and the deceased Cooper went to her house. Her evidence tends to show that the three men were drinking when they entered her home; that they brought with them a half-gallon jar containing about a quart of white liquor, and that they continued to drink. The defendant operated a store, and Mary Garland and her fourteen-year-old daughter, Aileen, came to get some aspirin. The deceased, who had never been in the home before, asked the fourteen-year-old girl to take a walk with him. The defendant then requested the three men to leave her home, and opened her front door. She then went in or was backed into her bedroom. The deceased suddenly started gritting his teeth and followed the defendant into her bedroom; that her pistol was on top of a dresser five or six steps from the door and the defendant was approaching her with his hand in his pocket and saying that he was going to kill her; that she begged him to stop but he would not stop and she shot him. The defendant weighs about 110 pounds. She testified that she was nervous and scared.

The jury returned a verdict of guilty of manslaughter and from the judgment imposed the defendant appeals, assigning error.

*Attorney-General McMullan and Assistant Attorney-General Love for the State.*

*W. C. Berry, G. D. Bailey, and W. E. Anglin for the defendant.*

DENNY, J. The appellant excepts to and assigns as error nine portions of the court's charge to the jury; all other exceptions have been abandoned.

We deem it necessary and appropriate in the disposition of this appeal to consider the following portions of the charge:

"To illustrate what I mean, if tonight when you put your car in the garage somebody jumps out in the dark and flashes his pistol on you and says he is going to kill you, you have the right to protect yourself and kill him. It might turn out later that the pistol is not loaded, has no cylinder, but you didn't know it, and you have the right to take the life of your assailant under these circumstances because you had a right to believe that you were about to be killed." Exception No. 5.

"On the other hand one cannot use the excessive force of taking human life." Exception No. 6.

"And if you shall have first found an unlawful killing with a deadly weapon, the burden would then be upon the defendant to satisfy you that in shooting the deceased she did not do so unjustified and with malice; and if she has so satisfied you and has not gone further, that would be an unlawful killing and would constitute manslaughter." Exception No. 9.

We concede that the illustration used, to which the defendant's fifth exception was taken, does illustrate what is meant by real or apparent danger, but on the other hand it was predicated upon a factual situation wholly unrelated to the facts in the instant case. The statute requires the court, in both criminal and civil actions, to declare and explain the law arising on the evidence in the particular case and not upon a set of hypothetical facts. G.S. 1-180. As a consequence of the use of the above illustration, we think the jury might have been misled, since the deceased did not jump out of the dark or flash a pistol or any other weapon on the defendant.

The sixth exception arises out of the language used by the court in connection with the defendant's right to expel or remove a person from her home. The court charged that a person in his own home has a right, for a reason or no reason, to order someone off his premises, and the person so ordered has the right to leave; and when one is ordered to leave the premises and refuses to go, then the one so ordering him has the right to use such force as is reasonably necessary to cause the intruder to leave. The court then said: "On the other hand one cannot use the excessive force of taking human life." This was followed with the statement that these are all abstract statements of the law which may be applicable to the facts in this case, depending upon the facts which the jury might find.

We think the instruction complained of was prejudicial since the justification or nonjustification of the killing of the deceased by the defendant grew out of circumstances connected with the defendant's request to the deceased and the two Petersons to leave her home. Whether the force used was actually necessary to repel the attack the defendant claims was being made on her, or whether some other or lesser force might have been adequate for her protection, was not the question for the jury to decide, but whether, when she did use the force which resulted in the death of the deceased, she had, under all the circumstances, reasonable cause to believe and did believe that such force was necessary to protect herself from impending danger or great bodily harm. *S. v. Rawley,* 237 N.C. 233, 74 S.E. 2d 620; *S. v. Spruill,* 225 N.C. 356, 34 S.E. 2d 142; *S. v. Bryant,* 213 N.C. 752, 197 S.E. 530; *S. v. Terrell,* 212 N.C. 145, 193 S.E. 161; 4 Am. Jur., Assault and Battery, section 50, page 152, *et seq.*

The challenge to that portion of the charge contained in the ninth exception must be upheld. We construe this instruction to mean that if the jury should first find an unlawful killing with a deadly weapon, the burden would then be upon the defendant to satisfy the jury that in shooting the deceased she was justified in doing so and did so without malice; and if she did so satisfy the jury, the killing would still be unlawful and the defendant would be guilty of manslaughter. Such is not the law.

The intentional killing of a human being with a deadly weapon raises two presumptions: first, that the killing was unlawful; and, second, that it was done with malice. *S. v. McNeill,* 229 N.C. 377, 49 S.E. 2d 733; *S. v. Childress,* 228 N.C. 208, 45 S.E. 2d 42; *S. v. Debnam,* 222 N.C. 266, 22 S.E. 2d 562. The killing with a deadly weapon, however, must be intentional to raise these presumptions which are rebuttable. *S. v. Gordon,* 241 N.C. 356, 85 S.E. 2d 322.

An unlawful killing of a human being with malice, and with premeditation and deliberation, is murder in the first degree; while an unlawful killing of a human being with malice, but without premeditation and deliberation, is murder in the second degree. And the unlawful killing of a human being without malice, and without premeditation and deliberation, is manslaughter. *S. v. Benson,* 183 N.C. 795, 111 S.E. 869; *S. v. Keaton,* 206 N.C. 682, 175 S.E. 296; *S. v. Utley,* 223 N.C. 39, 25 S.E. 2d 195.

If the defendant was justified in shooting the deceased, and did so without malice, the killing was not unlawful and she would be entitled to a verdict of not guilty.

For the reasons pointed out herein, the defendant is entitled to a new trial and it is so ordered.

New trial.

BARNHILL, C. J., took no part in the consideration or decision of this case.