## STATE v. ALVIS MANGUM.

(Filed 11 January, 1957.)

**1. Homicide § 16—**

The State's evidence establishing an intentional killing with a deadly weapon raises the presumptions that the killing was unlawful and that it was done with malice, casting the burden upon defendant of showing to the satisfaction of the jury matters in mitigation or excuse.

**2. Criminal Law §§ 42f, 52a(4)—**

The introduction by the State of statements or a confession made by defendant does not entitle defendant to nonsuit because of exculpatory averments therein when the State introduces other incriminating evidence, since the State is not precluded from showing facts in contradiction of the exculpatory statements, and the jury is not required to believe the whole of a confession, but may believe a part and reject a part.

**3. Homicide § 25—**

The State's introduction of statements of defendant that he was assaulted and threatened with death, ran in an attempt to get away from his assailant, who was pursuing him with an open knife, and finally shot his assailant in self-defense, does not entitle defendant to nonsuit when the State also introduces evidence tending to show that defendant shot deceased as they were standing still, facing each other a car's length distant, since the State's evidence does not bring the defendant within the principle of self-defense exculpating him as a matter of law.

**4. Criminal Law § 78c—**

While ordinarily an assignment of error must be supported by an exception duly taken, where the exception relates to remarks of the court in the absence of defendant's counsel so that no exception could then be taken, and exception is taken immediately after the discussion of the matter by the attorney with the court upon the attorney's coming into court, the exception will be considered.

**5. Criminal Law §§ 49, 50d—**

Where a defendant is late for the opening of court for the resumption of his trial, the court has the discretionary power to order the defendant into custody, and the court's action in doing so in the presence of the jury will not be held for error on defendant's exception when it is apparent that the jury understood the reason for the court's action and that the court's action could in no way be regarded by them as a reflection upon the credibility of the defendant as a witness.

**6. Criminal Law § 81c(4)—**

Where defendant is convicted of a lesser degree of a crime, error in the charge relating to a higher degree thereof cannot be prejudicial when there is nothing to show that the verdict was affected thereby.

JOHNSON. J., not sitting.

APPEAL by defendant from *Mallard, J.,* February-March Criminal Term 1956 of DURHAM.

Prosecution upon a bill of indictment charging the defendant with murder in the first degree of John L. Parrish.

At the beginning of the trial the solicitor for the State announced that he would not ask for a verdict of guilty of murder in the first degree, but would ask for a verdict of guilty of murder in the second degree or of manslaughter, as the facts might justify.

The defendant pleaded Not Guilty. The jury returned a verdict Guilty of manslaughter.

From judgment of imprisonment, the defendant appeals.

*George B. Patton, Attorney General, and Harry W. McGalliard, Assistant Attorney General, for the State.*

*Blackwell M. Brogden for Defendant, Appellant.*

PARKER, J. The defendant assigns as error the failure of the court to grant his motion for judgment of nonsuit, renewed at the close of all the evidence.

The evidence viewed in the light most favorable to the State presents this story:

On the night of the homicide, which the bill of indictment charges occurred on 10 September 1955, a crowd of people, about 50 or 60, were assembled in and around two places in Durham County—one known as the Chicken Shack and the other as Big John's. These places are about 200 feet apart. Some were drinking, some dancing, and some otherwise amusing themselves. The defendant was there with a pistol in his pocket. The deceased, John L. Parrish, a brother-in-law of the defendant was present.

In response to a call about 3:15 a.m. on Sunday 18 September 1955, L. R. Watson, a deputy sheriff of Durham County, went to the Chicken Shack arriving about 15 minutes after the call. It seems apparent from the evidence in the Record, including the testimony of the defendant, that the homicide occurred on the night of 17 September 1955, or shortly after midnight on that night, instead of on 10 September 1955, as charged in the indictment. He found the body of John L. Parrish lying in the center of the road almost half way between the Chicken Shack and Big John's. John L. Parrish was dead. His body was lying partially face down. The officer turned the body over, and found a knife about 2½ or 3 inches long with the blade open under the right side of the body by the hips. A lot of blood was on the ground. The defendant was not present. About a mile from the body defendant's automobile was found abandoned in a ditch. A search was made

that night for the defendant at his home, his mother's home, and elsewhere, and he could not be found.

About 4:00 a.m. on 18 September 1955 Dr. R. A. Harton, coroner of the county, examined the dead body of John L. Parrish. He had two pistol shot wounds: one almost in the center between the eyes, and one in the lower part of his chest. The fatal wound was the one between the eyes. The time of death was between midnight and 3:30 a.m., because *rigor mortis* had not set in.

The defendant told T. C. Leary, a deputy sheriff of the county, in jail on 19 September 1955, about the homicide. He said he was in Big John's place, and a girl he did not know gave him $5.00 to get changed. He went over to the Chicken Shack to get it changed. He got the change, and when he stepped out of the Chicken Shack, he met the girl and gave her the change. John L. Parrish walked up with a knife in his hand, cursed him, and said he was going to kill him. They had had no words before, and he didn't know Parrish was there. He ran around an automobile two or three times trying to get out of Parrish's way, and then he pulled out his pistol, and shot him twice. Parrish was running him at the time he fired—reaching for him. The first time he shot, Parrish did nothing; the second time he shot, Parrish fell to the ground. After the shooting, he got in his car and left. About a mile down the road he ran in the ditch. He got out of the car, and spent the night in the woods. Later the defendant told Leary he and Parrish the day of the homicide had had some trouble about flue wood to cure tobacco: it was a little argument that didn't amount to anything. On cross-examination Leary testified the defendant told him Parrish grabbed at him with the knife as he came out of the Chicken Shack before he started running around the car; that he didn't think he was going to be able to get away from him, and he pulled his pistol, and that Parrish was on him with the knife, when he shot. He didn't say how close Parrish was on him when he shot.

James M. Grady, a witness for the State, arrived at the Chicken Shack about 9:00 or 10:00 o'clock that night. At the time of the shooting he was on the back steps of the Chicken Shack talking to two men. He heard one shot, and in a short time two more shots. Then he saw Parrish fall. At the first shot he saw two men. Then he heard two shots, and saw one fall, and the other run. He saw the two men at an angle to the car. One was standing to the front and one to the rear. He did not see anybody running around the car. They were standing still. On cross-examination Grady testified: "They were standing in the road. I heard a shot and looked up and saw two people, one standing with the gun at one end of the car and a man falling at the other end. The one who fell was John L. Parrish."

J. M. Mangum, a deputy sheriff and witness for the State, testified the defendant told him as follows:

"He said he was up there that night, and he had been over to the Chicken Shack to get some change. When he started out the door, he saw John L. standing there, and John L. told him to wait a minute, he wanted to see him. He said to him, 'John L., I haven't got time to see you, wait,' or something like that. Said John L. made a break after him—said he ran around the car two or three times, then he broke loose and started running over to Big John's. And this boy got up close to him. Then he turned and said, 'I ain't running any more,' and jerked his pistol out and shot twice. Said Parrish fell, he reckoned. He ran."

The evidence shows that the defendant intentionally killed John L. Parrish with a deadly weapon, to-wit, a pistol. An intentional killing with a deadly weapon raises two presumptions against the killer: first, that the killing was unlawful, and, second, that it was done with malice. *S. v. Crisp,* 244 N.C. 407, 94 S.E. 2d 402; *S. v. Gordon,* 241 N.C. 356, 85 S.E. 2d 322; *S. v. Howell,* 239 N.C. 78, 79 S.E. 2d 235; *S. v. Benson,* 183 N.C. 795, 111 S.E. 869. Murder in the second degree is the unlawful killing of a human being with malice, but without premeditation and deliberation. *S. v. Crisp, supra; S. v. Street,* 241 N.C. 689, 86 S.E. 2d 277; *S. v. Benson, supra.*

"The law then casts upon the defendant the burden of proving to the satisfaction of the jury—not by the greater weight of the evidence nor beyond a reasonable doubt—but simply to the satisfaction of the jury (*S. v. Carland,* 90 N.C. 675), the legal provocation that will rob the crime of malice and thus reduce it to manslaughter, or that will excuse it altogether upon the grounds of self-defense, accident, or misadventure. *S. v. Little,* 178 N.C. 722." *S. v. Benson, supra.* To the same effect see: *S. v. Howell, supra; S. v. Terrell,* 212 N.C. 145, 193 S.E. 161.

The defendant contends that the State's evidence makes out for him a complete defense on the ground of self-defense, and that the court erred in denying his motion for judgment of nonsuit. If the defendant's contention were correct, which it is not, the court should have nonsuited the State upon authority of *S. v. Jarrell,* 233 N.C. 741, 65 S.E. 2d 304.

The State offered in evidence the statements of the defendant about the killing, but that did not prevent the State from showing the facts concerning the homicide were different from what the defendant said about them. *S. v. Phelps,* 242 N.C. 540, 89 S.E. 2d 132; *S. v. Simmons,* 240 N.C. 780, 83 S.E. 2d 904; *S. v. Bright,* 237 N.C. 475, 75 S.E. 2d 407.

It is elementary learning that the jury is not compelled to believe the whole of a confession. They may, in their sound discretion, believe

a part and reject a part, because they are the triers of fact. *S. v. Henderson,* 180 N.C. 735, 105 S.E. 339; *S. v. Ellis,* 97 N.C. 447, 2 S.E. 525; *S. v. Overton,* 75 N.C. 200.

The State's evidence shows different statements as to the killing made by the defendant to Deputy Sheriff Mangum and Deputy Sheriff Leary, the testimony of James M. Gray, "they were standing in the road, I heard a shot and looked up and saw two people, one standing with the gun at one end of the car and a man falling at the other end, the one who fell was John L. Parrish," and other facts. The State's evidence does not bring the defendant within the principle of self-defense exculpating him as a matter of law and dispensing with any determination of the facts by the jury. *S. v. Rawley,* 237 N.C. 233, 74 S.E. 2d 620; *S. v. Terrell, supra; S. v. Koutro,* 210 N.C. 144, 185 S.E. 682; *S. v. Marshall,* 208 N.C. 127, 179 S.E. 427; *S. v. Glenn,* 198 N.C. 79, 150 S.E. 663; *S. v. Robinson,* 188 N.C. 784, 125 S.E. 617.

The court properly overruled defendant's motion for judgment of nonsuit.

Defendant states in his brief, "the defendant's second assignment of error is based on Exception No. 18 (R. pp. 41, 42) and relates to certain remarks made by the Court in the presence of the jury." The trial lasted more than one day. While the trial was in progress, one morning upon the opening of court the following occurred in the presence of the jury: "COURT. Is the defendant or his counsel in court? Has any one seen Mr. Brogden (counsel for defendant) this morning? Is Alvis Mangum in the courtroom? If any one is interested in him, you had better see if you can find him. Call the defendant Alvis Mangum to come into court." Whereupon, the court directed the sheriff to go and get the defendant, and keep him in custody until the end of the trial.

After this had taken place, Mr. Brogden came in, and asked to be heard in the absence of the jury. The jury was sent from the courtroom, and in its absence the Record shows this:

"MR. BROGDEN: If your Honor please, I am well aware court opens at 9:30; I realize it is 9:35. I am fully aware your Honor may do so, but I feel this and would like for the record to show that upon the calling of the case the defense and their witnesses were ready. I think the defendant has been fair. I realize that yesterday morning as Court started it was 9:40 waiting for the Solicitor and the Sheriff. COURT. Court opened at 9:30 yesterday morning. The Court has not been late in opening at all. When the case was called for trial day before yesterday morning there was some discussion about the defendant's witnesses being present. Then when the defendant's witnesses were available at 2:30, the State's witnesses were not. But the first discussion about the case was that

one of the defense witnesses could not be found. It was held open until 2:30. Then the defendant was ready; the State was not. We waited until about 4:30.

"Mr. Brogden: By the same token, yesterday morning Mr. Gantt and Mr. Mangum sat in that room . . .

"Court: The true facts are that the Court permitted the Solicitor and Mr. Bane to examine some witnesses at the beginning of court yesterday morning. I am not commending anyone for being late. The Court asked some of the defendant's friends to go out in the hall and get him. Nobody moved. I had to have him called and have him brought in. The defendant paid no attention to court opening. He was wandering around in the hall. The Court could not go get him. The Court had to have him called and had him brought in. I have not taken advantage of the defendant at any stage of the trial. Have you stated all that you desire to state?

"Mr. Brogden: Yes, sir. I don't think there is any need to say any more.

"Objection. Exception #18."

An assignment of error must be supported by an exception, or it will be disregarded. *S. v. Wiley,* 242 N.C. 114, 86 S.E. 2d 913; *Barnette v. Woody,* 242 N.C. 424, 88 S.E. 2d 223; *Suits v. Ins. Co.,* 241 N.C. 483, 85 S.E. 2d 602; *S. v. Bittings,* 206 N.C. 798, 175 S.E. 299. The Record does not definitely show what Exception 18 refers to. Defendant in his brief says it "relates to certain remarks made by the court in the presence of the jury." However, as defendant's counsel was not in court when the judge made the remarks and placed the defendant in custody, and could not then and there make an exception, we shall consider both questions.

In *S. v. Simpson,* 233 N.C. 438, 64 S.E. 2d 568, after the defendant and his two witnesses Green and Hurlocker had testified, court took a recess for lunch. Immediately upon recess, some of the jurors, being still in the courtroom, the judge ordered the sheriff to take the defendant and his two witnesses into custody. They were immediately arrested in the courtroom and placed in jail. Later in the day the court instructed the solicitor to draw indictments against the defendant and his two witnesses for perjury in connection with the case. This Court said: "A new trial must be granted, however, because of the impeachment and depreciation by the court of the defendant's evidence and that of his witnesses, Green and Hurlocker. This was done, first, by ordering the defendant and his two witnesses into custody during the trial,

which action by the court came to the attention of the jury trying the case, S. v. McNeill, 231 N.C. 666, 58 S.E. 2d 366; and secondly, by the manner in which the court's charge was given to the jury." The decision is sound. This Court said in S. v. Swink, 151 N.C. 726, 66 S.E. 448: "But the committing of a witness, in either a criminal or a civil action, into immediate custody for perjury in the presence of the jury is almost universally held to be an invasion of the rights of the party offering the witness, and an intimation of opinion upon the part of the judge, prohibited by the statute."

In S. v. McNeill, 231 N.C. 666, 58 S.E. 2d 366, the court in the presence of the jury ordered the sheriff to take a witness of the defendant into custody immediately after the witness had testified, without giving any reason therefor. In awarding a new trial this Court said: "Undoubtedly, the jury must have concluded that the court thought the witness was guilty of perjury or of criminal relations with a female juvenile, either of which, we apprehend, was calculated to weaken his testimony in the eyes of the jury."

In S. v. Slagle, 182 N.C. 894, 109 S.E. 844, one of the defendants, on trial for murder, had been granted a nonsuit. Whereupon, the judge in the presence of the jury ordered him arrested for illicit distilling of spirituous liquor. The Court held that it was not an expression of opinion by the judge upon the weight or credibility of the evidence, as it would have been if he had been held for perjury.

In S. v. Hart, 186 N.C. 582, 120 S.E. 345, no reason was assigned for putting the defendant in custody in the presence of the jury, though the court stated in the presence of the jury that putting him in custody did not mean that the court thought he was guilty. In this case there were many exceptions to the charge on the ground that the court had expressed an opinion on the evidence. This Court said: "As the case goes back for another hearing, by reason of what we conceive to be an erroneous expression of opinion by the trial court . . ."

In S. v. Smith, 237 N.C. 1, 74 S.E. 2d 291, the Court quoted from 6 Am. Jur., Bail and Recognizance, Sec. 101, as follows: "In the absence of constitutional or statutory provisions to the contrary, the general rule is that the inherent power of the court to insure itself of the presence of the accused during trial may, in its discretion, be exercised so as to order a person who has been at liberty on bail, into the custody of the sheriff during trial of the case . . ." In the same case the court quoted from 23 C.J.S., Criminal Law, Sec. 977, as follows: "In a criminal prosecution the State is the plaintiff and may have custody of accused, this being essential for the protection of society. It is within the discretion of the trial court whether accused should be placed in custody; and the court's proper exercise of discretion is not

error where the jury were unaware that accused had been placed in custody, or were not influenced by that fact."

In *Hood v. U. S.,* C. C. A. Okl., 23 F. 2d 472, *certiorari* denied, 277 U.S. 588, 72 L. Ed. 1002, the Court committed the defendant Bowdry to the custody of the marshal, because he had absented himself from the courtroom during the progress of the trial. The Appeals Court said: "The demand for the exclusion of witnesses and the committal of defendant Bowdry to the custody of the marshal were matters addressed to the sound discretion of the trial court, and we do not find that that discretion was abused."

In *S. v. Smith,* 202 N.C. 581, 163 S.E. 554, during the trial the Court ordered the defendant into custody. This Court said: "The conduct of the defendant called for drastic action. His continued absence impeded the trial." The trial court found that the jury knew nothing of the order placing the defendant in custody.

It is perfectly plain from the Record that the judge's remarks and placing the defendant in custody was caused by the defendant's absence from the courtroom after court had opened and his trial should be resumed, and that the jury so understood it. There is no suggestion or intimation in the slightest degree that the committal of the defendant was for perjury. The judge's remarks and action had absolutely no reference as to any opinion of his as to the strength of the evidence, or as to the credibility of the defendant, or that he had any opinion whatever in respect to the case, and could not convey to the jury the slightest intimation that the judge had any opinion to such effect. The placing of the defendant in custody was within the discretion of the trial court, and under the circumstances as they appear in the Record we do not find that that discretion was abused. Assignment of error No. 2 is overruled.

We have carefully considered the charge of the court to the jury in its entirety, and the brief of the defendant as to his assignments of error to the charge. After such consideration error sufficient to justify a new trial does not appear. Many of these assignments of error refer to the instructions on the law of self-defense. The law in that respect has been so clearly and fully stated by the Court in numerous decisions that it would be supererogatory to repeat it. All assignments of error to the charge are overruled.

The defendant assigns as error the court's denial of his motion that the jury be instructed to disregard the charge of second degree murder. This assignment of error is without merit. The assignments of error to the charge in reference to second degree murder are untenable. The court's charge on second degree murder was correct, but whether it was or not, is not material on this appeal, because the defendant was convicted of the lesser offense of manslaughter, and there is nothing to show

that the verdict of guilty of manslaughter was thereby affected. *S. v. DeMai,* 227 N.C. 657, 44 S.E. 2d 218; *S. v. Messer,* 192 N.C. 80, 133 S.E. 404; *S. v. Evans,* 177 N.C. 564, 98 S.E. 788.

The assignment of error to the remarks to the jury by counsel for the private prosecution in his speech is without merit.

In the trial below we find

No error.

JOHNSON, J., not sitting.