STATE OF NORTH CAROLINA v. GEORGE JUNIOR JENNINGS

No. 6918SC183

(Filed 18 June 1969)

**1. Criminal Law § 104— motion for nonsuit — consideration of evidence**

On motion for nonsuit in a criminal action, the evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable intendment thereon and every reasonable inference therefrom; contradictions and discrepancies in the State's evidence are for the jury and do not warrant nonsuit.

**2. Homicide § 21— second degree murder — sufficiency of evidence**

The State's evidence *is held* sufficient to be submitted to the jury on the issue of defendant's guilt of second degree murder or manslaughter where it tends to show that during a gun battle with deceased, defendant intentionally shot deceased with a rifle, thereby causing his death.

**3. Criminal Law §§ 95, 113— evidence competent only for impeachment — request for instructions**

In this prosecution for second degree murder, the trial court did not err in failing to instruct the jury that evidence of defendant's prior convictions brought out on cross-examination of defendant by the solicitor should be considered only for the purpose of impeaching defendant's credibility where defendant made no request for such an instruction.

APPEAL by defendant from *Lupton, J.*, at the 9 December 1968 Criminal Session of GUILFORD Superior Court, High Point Division.

By indictment proper in form, defendant was charged with the murder of Willie Edward Gibson on 20 July 1968. When the case was called for trial, the solicitor for the State announced that the State would not ask for a verdict of murder in the first degree but would seek conviction of murder in the second degree or manslaughter. Defendant pleaded not guilty.

The evidence introduced at the trial is summarized as follows: For more than five years prior to 20 July 1968, defendant had known and had been seeing Naomi Gibson, wife of the deceased, Willie Gibson. Deceased had known of the relationship between his wife and the defendant for approximately four years but had continued to live with his wife and six children until Wednesday before his death on Saturday. On Wednesday, 17 July 1968, defendant took Mrs. Gibson and her six children from the Gibson residence and left them at the home of one of her relatives in the Florence community of Guilford County. Mrs. Gibson and the children remained there until the following Friday when they moved into the home of Mrs. Gibson's father, Lacy Clawson, who lived two doors from the home

where they had been since Wednesday. Around noon on Saturday, 20 July 1968, as defendant was returning to his home from work, deceased (Gibson) drove up beside the defendant, sounded his horn and motioned for defendant to stop. After stopping, defendant got out of his car and Gibson inquired if defendant knew where Mrs. Gibson was; defendant replied that he had heard that she was at her sister's. The two then went their respective ways. Around 1:00 p.m., defendant went to the home where Mrs. Gibson was staying and visited with her for a few minutes. A little later that afternoon as defendant was traveling on Penny Road, he met Gibson who pulled across the road in front of defendant and stopped, causing defendant to stop. Gibson walked up to defendant's car, jerked the door open, cursed defendant and struck defendant on his forehead and nose with a hard object. Defendant kicked Gibson off him and drove away. A short while later defendant, with a loaded .22 rifle in his car, drove to the Florence community; he saw the car Gibson had been driving in the driveway of the Clawson home where Gibson's wife and children were staying. Defendant parked on the edge of Bundy Road with part of his car on the paved surface of the road and part of it in the driveway of the Clawson residence. Shortly after defendant drove up, Gibson walked out of the Clawson house, obtained a .32 caliber pistol from his automobile and walked toward defendant's automobile. Gibson pointed his pistol toward defendant who was still seated in his car; defendant took his rifle and pointed it toward Gibson. Gibson ran to the rear of defendant's car and shot through the rear window of the car, after which defendant stuck his rifle out the window and fired several shots. Gibson then ran across Bundy Road, climbed a low bank on the opposite side of the road and again aimed his pistol at defendant. Defendant opened the door of his car and fired several shots in Gibson's direction. There was conflict in the testimony as to whether defendant shot at Gibson when Gibson first approached defendant's automobile. In any event, at some time during the altercation, two bullets from defendant's rifle struck Gibson, one causing a superficial wound over his armpit and the other striking him near his navel. Gibson fell to the ground, after which defendant and several others went to him and saw that he was critically wounded. While someone else called for an ambulance, defendant left in his automobile and drove to the home of a High Point police officer, advising the officer that he had shot a man and gave the officer his rifle. Medical testimony was to the effect that the bullet which entered Gibson's abdomen caused a hemorrhage resulting in death.

The jury returned a verdict finding the defendant guilty of man-

slaughter, and from a prison sentence of not less than seven nor more than ten years, defendant appealed.

*Attorney General Robert Morgan and Staff Attorney Andrew A. Vanore, Jr., for the State.*

*Schoch, Schoch & Schoch by Arch K. Schoch, Jr., for defendant appellant.*

BRITT, J.

[1] Defendant first assigns as error the overruling of his motion for nonsuit. It is well established in this jurisdiction that on motion to nonsuit in a criminal action, the evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable intendment thereon and every reasonable inference therefrom. Contradictions and discrepancies, even in the State's evidence, are for the jury to resolve, and do not warrant nonsuit. 2 Strong, N.C. Index 2d, Criminal Law, § 104, pp. 648-650.

In *State v. Cooper*, 273 N.C. 51, 159 S.E. 2d 305, in an opinion by Parker, C.J., we find the following:

"* * * When the State satisfies the jury from the evidence beyond a reasonable doubt that the defendant intentionally shot the deceased or the defendant admits that he intentionally shot the deceased, and thereby proximately caused his death, it raises two presumptions against him: (1) That the killing was unlawful, and (2) that it was done with malice. This constitutes the felony of murder in the second degree. *S. v. Gregory,* 203 N.C. 528, 166 S.E. 387; *S. v. Wagoner,* 249 N.C. 637, 107 S.E. 2d 83; *S. v. Phillips,* 264 N.C. 508, 142 S.E. 2d 337; 2 Strong, N.C. Index, Homicide, § 13. The intentional use of a deadly weapon as a weapon, when death proximately results from such use, gives rise to the presumptions. *S. v. Gordan,* 241 N.C. 356, 85 S.E. 2d 322; *S. v. Phillips, supra.* When the presumption from the intentional use of a deadly weapon obtains, the burden is upon defendant to show to the satisfaction of the jury the legal provocation that will rob the crime of malice and thus reduce it to manslaughter or that will excuse it altogether upon the grounds of self-defense. *S. v. Mangum, supra* [245 N.C. 323, 96 S.E. 2d 39]; *S. v. McGirt,* 263 N.C. 527, 139 S.E. 2d 640; *S. v. Todd,* 264 N.C. 524, 142 S.E. 2d 154. When defendant rebuts the presumption of malice only, the presumption that the killing was unlawful remains, making the crime manslaughter. 2 Strong, N.C. Index, Homicide, § 13. It was incumbent upon defendant

upon a plea of self-defense to satisfy the jury (1) that he did act in self-defense, and (2) that, in the exercise of his right to self-defense, he used no more force than was or reasonably appeared necessary under the circumstances to protect himself from death or great bodily harm. *S. v. McDonald,* 249 N.C. 419, 106 S.E. 2d 477. It is hornbook law that if excessive force or unnecessary violence is used in self-defense, the killing of the adversary is manslaughter at least. *S. v. Cox,* 153 N.C. 638, 69 S.E. 419; *S. v. Glenn,* 198 N.C. 79, 150 S.E. 663; *S. v. Terrell,* 212 N.C. 145, 193 S.E. 161; *S. v. Mosley,* 213 N.C. 304, 195 S.E. 830. * * *"

[2]  Applying the well-established principles above-stated to the evidence in this case, we hold that the evidence was sufficient to be submitted to the jury and the trial court did not err in overruling defendant's motion for nonsuit. The assignment of error is overruled.

[3]  Defendant's next assignment of error relates to the solicitor's cross-examination of defendant with regard to previous criminal convictions without instructions by the court limiting such evidence to impeachment of defendant's credibility. The record discloses that although defendant's counsel objected to the questions of the solicitor and moved to strike the answers, he did not request the trial judge to instruct the jury to limit consideration of the evidence to impeachment purposes. In *State v. Goodson,* 273 N.C. 128, 159 S.E. 2d 310, it is said:

"Admissions as to convictions of unrelated prior criminal offenses are not competent as substantive evidence but are competent as bearing upon defendant's credibility as a witness. Stansbury, North Carolina Evidence, Second Edition, § 112; *State v. Sheffield,* 251 N.C. 309, 312, 111 S.E. 2d 195, 197. No request was made that the court so instruct the jury. 'It is a well recognized rule of procedure that when evidence competent for one purpose only and not for another is offered it is incumbent upon the objecting party to request the court to restrict the consideration of the jury to that aspect of the evidence which is competent.' *State v. Ray,* 212 N.C. 725, 729, 194 S.E. 482, 484; Stansbury, *op. cit.,* § 79; Rule 21, Rules of Practice in the Supreme Court, 254 N.C. 803. * * *"

We hold that in the absence of a request by defendant's counsel that the testimony be received for the limited purpose of impeachment, the trial court did not err and the assignment of error related thereto is overruled.

Defendant's remaining assignments of error relate to the trial court's instructions to the jury. We do not deem it necessary to discuss these assignments of error; suffice to say, we have carefully considered the charge and find it to be free from prejudicial error. The assignments of error relating thereto are overruled.

The defendant received a fair trial and the sentence imposed was well within the limit provided by statute.

No error.

MALLARD, C.J., and PARKER, J., concur.