STATE OF NORTH CAROLINA v. JIMMY GRIFFIN

No. 413A82

(Filed 3 May 1983)

**1. Homicide §§ 5, 21.7— second degree murder in perpetration of felony—no such offense—sufficient evidence of second degree murder**

The jury's verdict of guilty of murder in the second degree in the perpetration of a felony must be set aside since there is no offense of felony murder in the second degree in North Carolina. However, the jury's verdict also finding defendant guilty of murder in the second degree was supported by evidence tending to show that the victim was shot by defendant while chasing defendant after defendant had stolen a purse from a car.

**2. Homicide § 31.7— remand for proper sentence for second degree murder**

Where the jury found defendant guilty of murder in the second degree and guilty of second degree murder in the perpetration of a felony, the trial court indicated on its judgment and commitment sheet that defendant was found guilty of two separate offenses, the verdict of guilty of second degree murder in the perpetration of a felony must be set aside since no such offense is recognized in North Carolina, and where it is unclear whether for sentencing purposes the trial court treated defendant's conviction of murder in the second degree as a single conviction under two theories or as two separate convictions, the case must be remanded to the superior court for resentencing on the valid second degree murder conviction.

**3. Criminal Law § 111.1— initial instruction to prospective jurors—failure to mention not guilty verdict**

The trial court did not express an opinion in violation of G.S. 15A-1222 or G.S. 15A-1213 in its initial statement to prospective jurors that it was their duty to determine "whether the defendant is guilty of the crime charged, or any lesser included offense, about which you are instructed" and in failing to mention that they could find defendant not guilty, although it would be the better practice to state explicitly to prospective jurors that it is their duty to determine whether defendant is guilty or not guilty.

**4. Criminal Law § 102.5— improper questions by prosecutor—cure of impropriety**

Impropriety in the prosecutor's reference to the subject as the defendant on three occasions when the subject had not been identified as the defendant by the witness was cured when the court sustained defendant's objection on all three occasions and on the third occasion admonished the prosecutor in the absence of the jury.

**5. Criminal Law § 99.7— ordering hostile witness to testify**

The trial court did not err in ordering a hostile witness to answer a question within his knowledge.

**6. Homicide § 28.1— self-defense—no duty to instruct**

The trial court in a homicide case did not err in failing to instruct the jury on self-defense where the only evidence remotely connected to the issue of

State v. Griffin

self-defense was evidence that the victim had grabbed defendant's arm in trying to apprehend him for having snatched a purse and that the defendant had made a broad statement while in prison to the effect that he had to kill the victim or else the victim would have killed him, and where there was no evidence that the 53-year-old victim was armed or had threatened defendant in any way.

7. **Criminal Law § 70— tape recording—deletion of incompetent portion**

The trial court did not err in the deletion of an incompetent portion of a prosecution witness's tape recorded statement which was admitted for corroborative purposes.

8. **Homicide § 32.1— submission of first degree murder—error cured by second degree verdict**

Any error in the trial court's submission of an issue as to defendant's guilt of first degree murder because the evidence was insufficient to show premeditation and deliberation was not prejudicial where the jury convicted defendant of second degree murder, thereby impliedly finding that the killing was without premeditation and deliberation, and where there was no showing that the verdict of second degree murder was affected by such error.

9. **Criminal Law § 102.6— jury argument—last argument by defense counsel—uncontradicted evidence**

The prosecutor's statements in his closing jury argument that defense counsel "will have the last argument because they did not put on any evidence" and that particular pieces of evidence had not been contradicted were not improper.

10. **Criminal Law § 111.1— propriety of certain instructions**

The trial court in a homicide case did not err in suggesting that the jurors "start at the top of the verdict sheet and move down" in their deliberations or in telling the jurors before their sequestration that "It is best not even to think about this case between now and in the morning." G.S. 15A-1236(a)(1)-(5).

11. **Criminal Law § 122.2— sending jury back to jury room for 10 minutes—no coercion of verdict**

The trial court did not coerce a verdict in stating to the jury after over 10 hours of deliberation, "All right, I'm going to leave you in there for 10 minutes. Let the jury go back to the jury room for 10 minutes," where the statement was made after the jury foreman was unable to tell the court whether she felt the jury would be able to reach a unanimous verdict, it appears that the court was sending the jurors back to the jury room for 10 minutes so that they could decide if they felt that at some point they could reach a unanimous verdict, and instead of determining if they would be able to reach a verdict, the jurors reached a verdict within such time.

12. **Criminal Law § 138— sentence for second degree murder—pecuniary gain aggravating factor**

In imposing a sentence for second degree murder, the evidence was sufficient to support the trial court's finding as an aggravating factor that the murder was committed for pecuniary gain where it tended to show that

defendant snatched a purse and was running away when he shot the victim, although defendant had dropped the purse before he shot the victim. G.S. 15A-1340.4(a)(1)(c).

DEFENDANT was convicted during the 15 March 1982 criminal session of Superior Court, COLUMBUS County, of murder in the second degree and murder in the second degree while in the perpetration of a felony. *Judge Edwin S. Preston, Jr.* ordered that defendant be imprisoned for life for the two convictions. Defendant appeals to this Court as a matter of right under G.S. 7A-27(a) (1981).

*Rufus L. Edmisten, Attorney General, by Richard H. Carlton, Assistant Attorney General, for the State.*

*William J. Williamson of Whiteville for defendant-appellant.*

FRYE, Justice.

The defendant was charged with the first-degree murder of Elbert "Red" Strickland. The State's evidence tended to show the following:

About 11 a.m. on 21 December 1981 Linda Jacobs, the victim's sister-in-law, left her car parked at the back door of the furniture store where her brother-in-law worked. Upon returning to her car with Mr. Strickland, Ms. Jacobs saw defendant coming out of the car with her purse. Defendant ran and Strickland chased him. While defendant was running away, the strap on the pocketbook broke and the purse fell to the ground. Defendant shot and killed Strickland during the chase.

Defendant did not testify or present any witnesses at trial.

Defendant was found guilty of murder in the second degree and murder in the second degree while in the perpetration of a felony.

I.

[1] We note at the outset that defendant contends in his thirteenth assignment of error that the trial court erred in denying his motion to set aside the verdict of murder in the second degree while in the perpetration of a felony "as being contrary to the weight of the evidence in that the felony had been completed

prior to the homicide." We agree that it was error for the trial court to fail to set aside the verdict, but not for the reason advanced by defense counsel. Instead, we hold that the verdict should have been set aside because there is no offense of felony murder in the second degree in North Carolina. *State v. Chamberlain*, 307 N.C. 130, 149, 297 S.E. 2d 540, 552 (1982); *State v. Davis*, 305 N.C. 400, 422, 290 S.E. 2d 574, 588 (1982). The doctrine of felony murder is only applicable to murder in the first degree. N.C.G.S. 14-17 (1981). We must, therefore, arrest judgment on the conviction of felony murder in the second degree. *See State v. McGaha*, 306 N.C. 699, 702, 295 S.E. 2d 449, 451 (1982) (judgment is arrested where fatal defect appears on the face of the record).

Defendant is not entitled to a new trial, however. In addition to the erroneous verdict as to "felony murder in the second degree," the jury returned a verdict of guilty of murder in the second degree. The conviction of murder in the second degree was proper. The trial court correctly instructed the jury as to the elements of that offense and there is sufficient evidence to support the verdict as will be shown below.

Murder in the second degree is the unlawful killing of a person with malice. *State v. Jones*, 287 N.C. 84, 100, 214 S.E. 2d 24, 35 (1975). In his charge to the jury on murder in the second degree, the trial judge correctly stated:

Second-degree murder differs from first degree murder in that neither specific intent to kill, premeditation, nor deliberation are necessary elements. In order for you to find the defendant guilty of second degree murder, the State must prove beyond a reasonable doubt that the defendant intentionally and with malice shot Red Strickland with a deadly weapon thereby proximately causing his death.

As this Court noted in *State v. Jones*, 287 N.C. 84, 214 S.E. 2d 24 (1975):

If the State satisfies the jury beyond a reasonable doubt or if it is admitted that a defendant intentionally assaulted another with a deadly weapon, thereby proximately causing his death, two presumptions arise: (1) that the killing was unlawful and (2) that it was done with malice. Nothing else

appearing, the person who perpetrated such assault would be guilty of murder in the second degree.

*Id.* at 100, 214 S.E. 2d at 35 (citation omitted).

In the case at bar, Ms. Jacobs testified that she saw defendant take her purse and flee and while her brother-in-law was chasing defendant he was shot. When she ran to her brother-in-law's aid he said to her, "Linda, he's got me." Another witness, Ricky Grady, testified that he saw defendant shooting a man during that chase. There is, therefore, sufficient evidence of murder in the second degree. *E.g., State v. Hodges,* 296 N.C. 66, 249 S.E. 2d 371 (1978); *State v. Alston,* 295 N.C. 629, 247 S.E. 2d 898 (1978).

[2]  Although the conviction of murder in the second degree is valid, we find, nevertheless, that we must remand the case for resentencing. In its instructions to the jury, the trial court stated that defendant could be found guilty of murder under two theories — murder in the second degree while in the perpetration of a felony "and/or" murder in the second degree. The jury indicated on its verdict sheet that defendant was guilty of murder in the second degree *and* guilty of second-degree murder while in the perpetration of a felony. The trial court then indicated on its felony judgment and commitment sheet that defendant was found guilty of two separate offenses — "Second-degree murder" and "Second-degree murder while in the perpetration of the felony of breaking or entering a motor vehicle with the intent to commit larceny." The trial court also indicated that the maximum prison term allowed for *each* offense was life imprisonment. Because it is unclear whether for sentencing purposes the trial court treated defendant's conviction of murder in the second degree as a single conviction under two theories or as two separate convictions, we must remand the case to Superior Court, Columbus County, for resentencing on the valid second degree murder conviction. *Cf., State v. Chamberlain,* 307 N.C. 130, 297 S.E. 2d 540 (1982). In *Chamberlain,* the defendant was convicted of only one offense — murder in the second degree — under two theories, one of which was invalid (second-degree felony-murder theory). Resentencing was unnecessary since it was clear that the trial court sentenced the defendant for only one conviction. *Id.*

## II.

We turn now to defendant's thirteen other assignments of error, all of which are overruled for the reasons given below.

**[3]** Defendant claims in his first assignment of error that the trial court erred in failing to mention to the prospective jurors during its initial statement to them that they could find defendant not guilty. The trial court stated to the prospective jurors, "at this time your only duty is to concern yourselves with the determination of whether the defendant is guilty of the crime charged, or any lesser included offense, about which you are instructed." Defendant contends that the trial court should have either explicitly stated to the prospective jurors that they could find defendant not guilty or rephrased its initial statement to them by saying that their duty was to determine whether "or not" defendant was guilty. In failing to do so, defendant contends that this initial statement amounted to an expression of opinion as to defendant's guilt on the part of the judge in violation of N.C.G.S. 15A-1222 (1978) and N.C.G.S. 15A-1213 (1978). We disagree. Although the better practice would be to explicitly state to prospective jurors that their duty is to determine whether defendant was guilty *or not guilty,* we do not feel that a failure to do so at this stage of the proceedings was error. In any event, the judge explicitly stated several times in his final instructions to the jury that they could find defendant not guilty, thereby clearing up any possible misunderstanding he may have created in his statements to the jurors before they were impaneled. *See State v. Woods,* 307 N.C. 213, 222, 297 S.E. 2d 574, 579-80 (1982); *State v. Reynolds,* 307 N.C. 184, 194, 297 S.E. 2d 532, 538 (1982).

**[4]** Defendant next contends that the trial court erred in failing to grant a motion for mistrial on grounds the prosecutor referred to Griffin in the presence of the jury three times as the defendant before Griffin was identified as such. We cannot agree that a motion for mistrial should have been granted here. In the first two instances in which the prosecutor referred to Griffin as the defendant, defense counsel objected, the trial court sustained the objection, and the prosecutor rephrased his question. When it happened a third time, Judge Preston asked the jurors to leave the courtroom after sustaining defense counsel's objection and then admonished the prosecutor at length about referring to Grif-

fin as the defendant before he had been identified as such. We hold that the trial court's scrupulous handling of the prosecutor's inappropriate references to Griffin as the defendant cured the improprieties. *See, e.g., State v. Robbins,* 287 N.C. 483, 487-88, 214 S.E. 2d 756, 760 (1975), *death penalty vacated,* 428 U.S. 903, 96 S.Ct. 3208, 49 L.Ed. 2d 1208-09 (1976); *State v. Jarrette,* 284 N.C. 625, 645-46, 202 S.E. 2d 721, 734-35 (1974), *death penalty vacated,* 428 U.S. 903, 96 S.Ct. 3205, 49 L.Ed. 2d 1206-07 (1976). There is, therefore, no error here.

[5]    In his third assignment of error defendant contends that the trial court erred "in ordering a State's witness to testify against the defendant." We have reviewed the transcript and find no error here. After being called to testify, William Vereen repeatedly claimed, while under oath, to have nothing to say about the case. In the course of questioning Vereen out of the presence of the jury about a statement he had made to the District Attorney's office concerning the Strickland murder, the prosecutor asked, "Well you were in jail at the time [you made the statement] weren't you?" At that point the trial judge stated, "All right Mr. Witness, I order you to answer the question. I specifically order you to answer the question." Vereen then stated, "Yes, I was in jail at the time." We find no error in a trial court ordering a hostile witness to answer a question within his knowledge. The trial judge's conduct here was entirely proper; indeed, we note that a trial court has the power to hold a witness in criminal contempt for willfully refusing to answer a proper question. N.C.G.S. 5A-11(a)(4) (1981); *In re Williams,* 269 N.C. 68, 74-76, 152 S.E. 2d 317, 322-23 (1967), *cert. denied,* 388 U.S. 918, 87 S.Ct. 2137, 18 L.Ed. 2d 1362 (1967). In any event, since this exchange occurred out of the presence of the jury, it could not have prejudiced defendant.

[6]    Fourth, defendant contends that the trial court erred in not charging the jury on the issue of self-defense. We note, first that defendant did not adhere to Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure, 303 N.C. 713, 716-17 (1981) (amending 287 N.C. 669, 699 (1975)), because he failed to object to the jury charge, as it stood, before the jury retired to consider its verdict. Rule 10(b)(2) requires such an objection before a party may assign as error any portion of the jury charge or omission

therefrom. Nevertheless, we have determined that this assignment of error is without merit for the reasons discussed below.

In *State v. Bush*, 307 N.C. 152, 297 S.E. 2d 563 (1982), this Court articulated the elements of imperfect and perfect self-defense and held that before a defendant is entitled to an instruction on self-defense, the trial court must answer two questions in the affirmative.

(1) Is there evidence that the defendant in fact formed a belief that it was necessary to kill his adversary in order to protect himself from death or great bodily harm, and

(2) if so, was that belief reasonable? If both queries are answered in the affirmative, then an instruction on self-defense must be given.

*Id.* at 160, 297 S.E. 2d at 569. The Court stated that if "the evidence requires a negative response to either question, a self-defense instruction should not be given." *Id.* at 160-61, 297 S.E. 2d at 569.

In applying the foregoing rule, the Court in *Bush* reasoned as follows:

The record before us is void of any evidence tending to show that the defendant in fact believed it necessary to kill the deceased in order to save himself from death or great bodily harm. The defendant's own testimony taken in the light most favorable to him indicates clearly that Marshburn [the victim], at worst, pushed the defendant and told him to get out of the Marshburn home. The defendant clearly testified that Marshburn "had not threatened to use a weapon" against the defendant and had not attempted even to strike the defendant other than by placing his hands upon him and pushing him. There is absolutely no evidence tending to indicate that Marshburn was so large or powerful as to cause the defendant to be unduly alarmed by such conduct. To the contrary, the evidence shows that Marshburn was a 65 year old man and the defendant was a 20 year old member of the United States Marine Corps. *Nor are the defendant's self-serving statements that he was "nervous" and "afraid" and that he thought he was "protecting myself" an adequate*

*basis for an instruction on self-defense. Even these self-serving statements do no more than indicate merely some vague and unspecified nervousness or fear; they do not amount to evidence that the defendant had formed any sub-jective belief that it was necessary to kill the deceased in order to save himself from death or great bodily harm.* In-stead, all of the evidence tends to indicate that the defendant had not formed a belief that it was necessary to kill Kirby Marshburn in order to save himself from death or great bodi-ly harm. It is even more apparent, if that is possible, that any fear by the defendant of death or great bodily harm was not reasonable. The circumstances as the defendant testified that they appeared to him at the time were totally insufficient to create any such belief in the mind of a person of ordinary firmness.

*Id.* at 159-60, 297 S.E. 2d at 568-69 (emphasis added).

In the case at bar, the only evidence remotely connected to the issue of self-defense is evidence that: (1) the defendant made a broad statement while in prison to the effect that he had to kill the victim or else the victim would have killed him, and (2) the victim had grabbed defendant's arm in trying to apprehend him for having snatched Ms. Jacob's purse. There is no evidence that the fifty-three year old victim was armed or had threatened defendant in any way. The evidence in this case, therefore, is not sufficient to justify an instruction to the jury on the issue of self-defense because it does not amount to "evidence that the defend-ant in fact formed a belief that it was necessary to kill his adversary in order to protect himself from death or great bodily harm," *State v. Bush,* 307 N.C. at 160, 297 S.E. 2d at 569.

[7] Fifth, defendant contends that the trial court erred "in per-mitting the prosecution to play before the jury only portions of a tape recorded statement of the defendant in that this amounts to a deletion contrary to case law." Defendant cites only two cases in support of his argument: *State v. Lynch,* 279 N.C. 1, 181 S.E. 2d 561 (1971); and *State v. Harmon,* 31 N.C. App. 368, 229 S.E. 2d 233 (1976). Both of these cases set forth the requirements which must be met before a defendant's tape recorded statement is ad-mitted into evidence. In *Lynch* this Court held:

To lay a proper foundation for the admission of a defendant's recorded confession or incriminating statement, courts are in general agreement that the State must show to the trial court's satisfaction (1) that the recorded testimony was legally obtained and otherwise competent; (2) that the mechanical device was capable of recording testimony and that it was operating properly at the time the statement was recorded; (3) that the operator was competent and operated the machine properly; (4) the identity of the recorded voices; (5) the accuracy and authenticity of the recording; (6) that defendant's entire statement was recorded and no changes, additions, or deletions have since been made; and (7) the custody and manner in which the recording has been preserved since it was made. Annot., 58 A.L.R. 2d 1024 §§ 4 and 8 and cases therein cited; 29 Am. Jur. 2d Evidence § 436 (1967).

279 N.C. at 17, 181 S.E. 2d at 571.

We have examined the trial transcript and determined that the trial court found that a proper foundation had been laid in this case. *State v. Lynch*, 279 N.C. 1, 181 S.E. 2d 561 (1971).

Although defendant's brief refers to the tape recorded statement as "a tape recorded statement of the defendant," the transcript shows that this recorded statement was not from defendant, but rather from one of the prosecution's witnesses. The State wanted the tape recording admitted into evidence for corroborative purposes. The trial court determined that most of the statement was corroborative but ordered that an end portion of the tape not be played to the jury because it was not corroborative. Defendant has not shown, and we did not find, any evidence that the deleted portion was relevant to the case. Clearly, the exclusion of an incompetent portion of a statement is not erroneous and does not amount to an improper "deletion" of a recorded statement. To hold otherwise would mean that either an entire statement must be admitted even though it contains incompetent material or that an entire statement must be excluded if it contains any incompetent material. The assignment of error is overruled.

[8] Sixth, defendant contends that the trial court erred in denying his motion "to dismiss first-degree murder charges against

him at the close of the State's evidence and at the close of all of the evidence," because there was not sufficient evidence of premeditation and deliberation.

In *State v. DeMai*, 227 N.C. 657, 44 S.E. 2d 218 (1947), this Court held that a defendant convicted of murder in the second degree is not entitled to a new trial for any errors committed in the trial court's instructions to the jury on murder in the first degree *"in the absence of showing that the verdict of second degree murder was thereby affected." Id.* at 662, 44 S.E. 2d at 221 (emphasis added). In relying on *DeMai*, this Court reached a similar result in *State v. Casper*, 256 N.C. 99, 102, 122 S.E. 2d 805, 807 (1961), *cert. denied*, 376 U.S. 927, 84 S.Ct. 691, 11 L.Ed. 2d 622 (1964) where a defendant contended it was error for the trial court to refuse to instruct the jury that in no event could it return a verdict of guilty of murder in the first degree. The Court held that because the jury convicted the defendant of murder in the second degree, the conviction on the lesser offense "rendered harmless any error with respect to a higher offense." *Id., citing State v. DeMai*, 227 N.C. 657, 44 S.E. 2d 218 (1947). The Court also applied the *DeMai* reasoning in *State v. Mangum*, 245 N.C. 323, 330-31, 96 S.E. 2d 39, 45 (1957), in holding that the trial court's denial of defendant's motion to instruct the jury to disregard the charge of murder in the second degree was "immaterial" when defendant was convicted of the lesser offense of manslaughter.

In the case at bar, defendant contends that there was not sufficient evidence of premeditation and deliberation. We note that the difference between murder in the first degree and murder in the second degree is that premeditation and deliberation are essential elements of only murder in the first degree. *See, e.g., State v. Meadows*, 272 N.C. 327, 331, 158 S.E. 2d 638, 641 (1968). Because the jury convicted defendant of murder in the second degree, thereby impliedly finding that the killing was without premeditation and deliberation, and in the absence of any showing that the verdict of murder in the second degree was thereby affected, we hold that any error the trial court *may* have committed in submitting the charge of murder in the first degree to the jury was not prejudicial. *State v. Williams*, 288 N.C. 680, 699, 220 S.E. 2d 558, 571 (1975); *State v. Casper*, 256 N.C. 99, 102, 122 S.E. 2d 805, 807 (1961), *cert. denied*, 376 U.S. 927, 84 S.Ct. 691, 11 L.Ed. 2d

622 (1964); *State v. Mangum*, 245 N.C. 323, 96 S.E. 2d 39, 45 (1957); *State v. DeMai*, 227 N.C. 657, 44 S.E. 2d 218 (1947).

[9] Seventh, defendant contends that the prosecutor's statements to the jury in his closing argument constitute reversible error. We hold that they do not. At one point the prosecutor remarked that defense counsel "will have the last argument because they did not put on any evidence. . . ." We agree with the Court of Appeals' decision in *State v. Miller*, 32 N.C. App. 770, 233 S.E. 2d 662, *cert. denied*, 292 N.C. 733, 235 S.E. 2d 787 (1977), that such a remark is not prejudicial error. Defendant also complains about the following: in his closing argument the prosecutor discussed portions of the evidence and noted that particular pieces of evidence had not been contradicted. We held in *State v. Smith*, 290 N.C. 148, 165-68, 226 S.E. 2d 10, 20-22, *cert. denied*, 429 U.S. 932, 97 S.Ct. 339, 50 L.Ed. 2d 301-02 (1976), that this was not improper.

Eighth, defendant contends that the trial court erred in failing to instruct the jury that they could find defendant not guilty. We note that the trial court *did* instruct the jury that they could find defendant not guilty. The trial court stated, "at this time your only concern is to determine whether the defendant is guilty of the crime charged or any lesser included offense about which you are instructed." Immediately thereafter he stated at least four times in various portions of the jury instructions themselves that one of the possible verdicts the jury could return was not guilty. Indeed, we note that the verdict of "not guilty" was an option printed on the verdict sheet submitted to the jury. As this Court has stated many times before, jury instructions must be construed contextually in determining whether prejudicial error has been committed. *E.g., State v. Jones*, 294 N.C. 642, 653, 243 S.E. 2d 118, 125 (1978); *State v. Cook*, 263 N.C. 730, 734, 140 S.E. 2d 305, 309 (1965). We find no error here.

[10] Defendant contends in his next three assignments of error that the following statements which the trial court made to the jury were erroneous: (1) after defining the first element of "second degree murder while in the perpetration of a felony" the trial court said, ". . . and so you've got that verdict" before explaining the second element; (2) suggesting that the jurors "start at the top of the verdict sheet and move down" in their delibera-

tions; and (3) telling the jurors before their sequestration that "It is best not even to think about this case between now and in the morning." It suffices to say that we have examined the transcript and find that the first statement is not erroneous when read in context. *E.g., State v. Jones*, 294 N.C. 642, 653, 243 S.E. 2d 118, 125 (1978). The second statement suggesting that the jurors "start at the top of the verdict sheet and move down" was entirely appropriate. The third statement admonishing the jurors not to think about the case was entirely appropriate under N.C.G.S. 15A-1236(a)(1)-(5) (Cum. Supp. 1981). The trial court is required, at appropriate times, to admonish jurors that they are not allowed, among other things, to discuss the case with others or form an opinion as to defendant's guilt or innocence prior to retiring to deliberate on their verdict.

[11]   Defendant also contends that the trial court erred in stating to the jury after over ten hours of deliberation, "All right, I'm going to leave you in there for ten minutes. Let the jury go back to the jury room for ten minutes." Defendant claims this statement amounted to coercion of a jury verdict. We cannot agree. We note the trial court's statement was made after the jury foreman was unable to tell the judge whether she felt the jury would be able to reach a unanimous verdict. The colloquy was as follows:

> COURT: O.K. Madame Foreman, will you please rise. I want to ask you a series of questions again, and I want a yes or no answer, if you would please. First, are you making any progress? Yes or no, to the best you know.
>
> FOREMAN: Yes.
>
> COURT: Second, has the verdict changed in any way in the last hour and a half?
>
> FOREMAN: No.
>
> COURT: So, you're (sic) answer is no?
>
> FOREMAN: Since we got that paper, no, not since we got that paper.
>
> COURT: So I take it your vote count is the same?
>
> FOREMAN: Yes.

---

State v. Griffin

---

COURT: Now you have been deliberating for almost eleven hours. Do you feel that you will be able to reach a unanimous verdict? Or, it's hard to say?

FOREMAN: Hard to say.

COURT: I sort of put you on the spot and for that I apologize. I sorta (sic) need to know.

FOREMAN: Pardon?

COURT: I sort of need to know the answer.

FOREMAN: Yes.

COURT: All right, I'm going to leave you in there for ten minutes. Let the jury go back to the jury room for ten minutes.

When the trial judge's statement is read in context, it appears that he was sending the jurors back to the jury room for ten minutes so that they could decide if they felt that at some point they could reach a unanimous verdict. Instead of determining *if* they would be able to reach a verdict, the jurors reached a verdict. There is no error here.

[12] Finally, defendant contends that the trial court erred in considering as an aggravating factor, under N.C.G.S. 15A-1340.4(a)(1) (c) (Cum. Supp. 1981), that the murder was committed "for pecuniary gain" because there is no evidence to support this finding. This argument is without merit. There is ample evidence that defendant snatched a purse and was running away when he shot the victim. Although defendant dropped the purse before he shot the victim, his entire course of conduct clearly was "for pecuniary gain." In addition, defendant complains that this aggravating factor cannot be used for a second reason: it is an essential element of the "second-degree felony-murder" conviction. We need not address this argument because we are arresting judgment on that conviction.

In conclusion, therefore, we find no error in the determination of guilt on the charge of murder in the second degree. We must, however, vacate defendant's sentence and remand the case to the Superior Court of Columbus County for resentencing.

In re Elkins

The result is:

(1) The guilty verdict of felony murder in the second degree is set aside and the judgment thereon is

Arrested.

(2) No error in the guilt phase on the charge of murder in the second degree.

(3) Sentence vacated and case

Remanded for new sentencing hearing upon the conviction of murder in the second degree.