## STATE v. GERALD THOMAS CASPER.

(Filed 13 December, 1961.)

**1. Homicide § 20— Evidence of defendant's guilt of murder in the second degree held sufficient to sustain conviction.**

Evidence tending to show that defendant and deceased were sitting in his car in front of her house drinking late at night, that defendant "passed out," that when he regained consciousness some two hours later he was sitting in his car in a wooded area, that blood of a single type was on defendant's clothes, the deceased, and in the car and also on a cinder block, apparently the murder weapon, found at the scene, and that defendant left the scene, hid his clothes and the seatcovers of the car, and washed the blood from the car, *is held* sufficient to be submitted to the jury on the question of defendant's guilt of murder in the second degree, notwithstanding the absence of evidence of motive.

**2. Criminal Law § 43—**

Where photographs are identified as accurate representations of the scene of the crime by the witness, the photographs are competent in evidence for the purpose of enabling the witness to explain his testimony, and a general objection to the admission of the photographs in evidence cannot be sustained.

**3. Criminal Law § 90—**

A general objection to evidence cannot be sustained if the evidence is competent for any purpose. Rule of Practice in the Supreme Court No. 21.

**4. Criminal Law § 164—**

Where the jury convicts the defendant of murder in the second degree, asserted error in submitting the question of defendant's guilt of murder in the first degree is rendered harmless.

APPEAL by defendant from *McKimmon, J.,* December 1960 Term, WAKE Superior Court.

Criminal prosecution upon a bill of indictment charging Gerald Thomas Casper with the capital felony of murder in the first degree in the killing of one Doris Vivian Powell. Upon arraignment, the defendant entered a plea of not guilty.

The State's evidence tended to show the following: In the late afternoon of May 2, 1960, the dead body of Doris Vivian Powell was found in a wooded area near a dirt road leading from Glascock Street to Lyons Park in the outskirts of Raleigh. The face and head of the deceased were horribly mangled and covered with blood. Nearby was a cinder block, also covered with blood.

On the night of May 1, the deceased, the defendant, and Ed Faircloth, a friend of the deceased, were together, riding around Raleigh in the defendant's automobile, from about 9:00 o'clock until about 2:30 when they returned to the home of the deceased. Faircloth and the

deceased got out of the car, started into the house, whereupon the deceased returned to the car, had a short conversation with the defendant, who then drove away. Faircloth and the deceased entered her house where he called a cab which appeared in about ten minutes and carried him to the bus station where he caught a bus to Winston-Salem.

During the police investigation the defendant stated he, according to prearrangement, drove back to the home of the deceased after Faircloth left, and that he and the deceased sat in the car where they continued drinking; that he "passed out" while he was there and does not remember leaving the vicinity of the deceased's home. Thereafter the next thing he remembered "was waking up" about 5:00 or 5:30 on the morning of May 2. "He stated that he looked around and saw blood on the dashboard . . . on the seat covers and blood on him." His first thought was that he had been in a fight. He looked in the rear view mirror to see if he had any wounds. At that time he saw a body a short distance in front of his vehicle; that he became scared, got back in the car and went home. He further stated he washed the blood from the dashboard, took the bloodstained seat covers from the car, concealed them, took off his bloody clothes and hid them under the bunk in the trailer where he lived.

The officers found the clothes, obtained blood samples from them, from the cinder block, and from the deceased's body. Analysis showed all the blood to have been of the same type.

The State offered in evidence photographs of the dead body, the cinder block and other blocks and building materials near the place where the body was found. A witness (the first to inspect the scene) testified the photographs fairly represented the conditions which he saw and described though he did not see the actual taking of the photographs. The defendant entered a general objection to their admission which the court overruled.

At the close of the State's evidence the defendant moved to dismiss. The court overruled the motion. The defendant rested and renewed his motion to dismiss, which was again overruled. The defendant requested the court to instruct the jury that in no event could it return a verdict of guilty of murder in the first degree. The court refused to charge as requested. The jury returned a verdict guilty of murder in the second degree. The court entered judgment that the defendant be confined in the State's prison for not less than 25 years nor more than 30 years. The defendant appealed, assigning errors.

*T. W. Bruton, Attorney General, Harry W. McGalliard, Asst. Attorney General, for the State.*

*Blanchard and Farmer, for defendant, appellant.*

HIGGINS, J.　The defendant argues the court committed error in refusing to allow his motion to dismiss at the close of the evidence. He insists if he is not entitled to have his conviction reversed, he is entitled to a new trial (1) because of the erroneous admission of the photographs in evidence and (2) because of the court's failure to charge the jury that in no event could it return a verdict of guilty of murder in the first degree.

The evidence in the case fails to show any motive for the killing. Nevertheless, it does show by the defendant's admission that he and the deceased were in his vehicle outside her home in Raleigh about three o'clock in the morning. Both were drinking. He "passed out." He awoke in the vehicle about two hours later. His clothes and his vehicle were covered with blood. The body of the deceased was a few feet in front of his vehicle. He left the scene, went home, hid his clothes, washed the blood from the interior of the automobile, removed and concealed the bloodstained seat covers. The blood on his clothes, on what appeared to be the death weapon, and on the body of the deceased was of the same type.

The evidence does not disclose the distance between the home of the deceased in Raleigh and the place where her body was found on the outskirts. The evidence permits the inference the killing took place where the body was found because the cinder block apparently used as the weapon and other building materials were present at that place. There was no evidence that a cinder block was available as a weapon at the home of the deceased. At the same time, the blood in the vehicle may have been from a wound inflicted in the vehicle or outside, and the body carried in the vehicle, or the blood in the vehicle may have come from the defendant's bloody clothes.

While the case is not without its mysterious aspect, we think the evidence sufficient to require its submission to the jury under the applicable rules stated in: *State v. Parrish,* 251 N.C. 274, 111 S.E. 2d 314; *State v. Davis,* 246 N.C. 73, 97 S.E. 2d 444; *State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431, and other cases therein cited.

The photographs introduced were identified as accurate representations. They were offered and admitted over general objection. They were properly admissible for the limited purpose of enabling the witness the better to explain and the court and jury the better to understand and interpret his testimony. If the defendant had requested that their admission be so limited, failure of the court to do so would have been error. *State v. Norris,* 242 N.C. 47, 86 S.E. 2d 916. However, when a general objection is interposed and overruled it will not be considered reversible error if the evidence is competent for any purpose. Rules of Practice in the Supreme Court, Rule 21, 254 N.C. 803; *State v. Ham,*

224 N.C. 128, 29 S.E. 2d 449; *State v. Tuttle,* 207 N.C. 649, 178 S.E. 76; *State v. McGlammery,* 173 N.C. 748, 91 S.E. 371. The assignment of error based on the admission of the photographs, therefore, is not sustained.

Lastly, the defendant argues he should be granted a new trial for failure of the court to charge that in no event could he be convicted of murder in the first degree. The jury acquitted of the capital felony. Conviction of murder in the second degree rendered harmless any error with respect to a higher offense. *State v. DeMai,* 227 N.C. 657, 44 S.E. 2d 218.

The evidence was sufficient to survive the motion for nonsuit. What it proved, or failed to prove, was for the jury. In the trial, therefore, in law there is

No error.