STATE OF NORTH CAROLINA v. THOMAS H. WYNN

No. 7516SC130

(Filed 7 May 1975)

Homicide § 26— conviction of voluntary manslaughter — submission of second degree murder — no error

Defendant's conviction of voluntary manslaughter rendered harmless the submission of the greater charge of second degree murder to the jury, at least absent some showing that the verdict of guilty of the lesser offense was affected thereby.

ON writ of *certiorari* to review the order of *Clark, Judge.* Judgment entered 7 August 1974 in Superior Court, ROBESON County. Heard in the Court of Appeals 15 April 1975.

Defendant pleaded not guilty to a charge of murder and was convicted of voluntary manslaughter.

Defendant's prosecution arose out of a shooting of one Edmund Hardin on the morning of 27 October 1973. Witnesses for the State testified that earlier that morning Robert Wynn, the defendant's brother, and Hardin got into an argument at a party near the defendant's trailer. After the argument Hardin and a companion, Reginald Bell, started walking toward Hardin's car, which was parked some one hundred feet from defendant's trailer. Bell stated that he heard defendant say, "Let's get him, boys," and then saw defendant go into his trailer. Hardin went to his car, opened the trunk, and took out a paper bag. He and Bell then walked back towards defendant's trailer. As they approached the trailer, defendant started shooting. Bell scrambled for cover. One of defendant's shots hit Hardin, and he fell. None of the State's witnesses saw a gun either in Hardin's possession or on the ground where he fell. Two of the witnesses testified that they did not see a paper bag near Hardin's body.

Linda McGirt, who was in her trailer when the shooting occurred, looked out her window as her husband, Billy, ran to Hardin's aid. Linda McGirt next ran to Hardin, then to the defendant's trailer. The defendant was inside, and stated that Hardin had fired at him.

When Billy McGirt got to Hardin, he was still alive and called out Billy's name. Billy McGirt then ran to his trailer, got his car keys, and took Hardin to the hospital.

Evidence offered by the defendant indicated that he was acting in self-defense. Thomas Wynn testified that his brother, Robert, arrived at the party and began talking with the deceased. Defendant then went to his trailer. Another of his brothers, Arthur, ran up, shouting that Hardin was going to get a gun to kill Robert. Arthur asked the defendant to give him his gun. Defendant got his gun and went outside just as Hardin was approaching his trailer. Defendant stated that he could not give the gun to Robert, who was "half-crazed" with drink, or to Arthur because of his excited emotional state. Defendant tried unsuccessfully both to get Robert into his trailer and to quiet Arthur. Defendant then spoke to Hardin, who said he intended to kill defendant. While they were standing fifteen feet apart, Hardin fired three shots at defendant. None found its target. As Hardin prepared to fire a fourth time, defendant shot him. He then ran to administer first aid to Hardin, but Hardin was dead. Defendant put his gun on a car, told Arthur to put it up, and went into his trailer to call the police.

Arthur Wynn testified that Robert picked up Hardin's gun and put it in his pocket. However, Arthur sneaked the gun out of Robert's pocket and threw it into a nearby drainpipe. He then took defendant's gun from the car and threw it into a creek.

Luther Sanderson, a deputy sheriff at the time of the shooting, testified for the defense. He stated that in investigating the shooting, he found the two pistols where Thomas had placed them. Both were entered as exhibits. Sanderson also testified that the State's witness Bell originally had stated that Hardin had taken a gun from the bag and fired at defendant but that later Bell changed his position and denied this.

Eight witnesses testified to defendant's good character and reputation.

*Attorney General Edmisten, by Associate Attorney Issac T. Avery, III, for the State.*

*L. J. Britt and Son, by L. J. Britt and Bruce W. Huggins, for the defendant-appellant.*

BROCK, Chief Judge.

Defendant's three assignments of error raise one issue for our resolution: Did the trial court err in failing to dismiss the charge of second degree murder? We point out that defendant was convicted of voluntary manslaughter and conclude that his conviction of a lesser charge rendered harmless the submission of the greater charge to the jury, at least absent some showing that the verdict of guilty of the lesser offense was affected thereby. *State v. Sallie,* 13 N.C. App. 499, at 508, 186 S.E. 2d 667, at 672-673 (1972), *cert. denied,* 281 N.C. 316 (1972) ; *State v. Casper,* 256 N.C. 99, 122 S.E. 2d 805 (1961). Defendant has made no showing that his conviction was affected in any way by the jury's consideration of his possible guilt of the more serious charge.

No error.

Judges PARKER and ARNOLD concur.