STATE OF NORTH CAROLINA v. REGINAL CORNELIUS BERKLEY

No. 8113SC737

(Filed 2 March 1982)

### 1. Criminal Law § 172 — error cured by verdict

Any error with respect to the greater crimes charged was rendered harmless by the conviction of defendant of lesser included offenses absent some showing that the verdicts of guilty as to the lesser crimes were affected thereby.

### 2. Robbery § 4.2 — common law robbery — sufficiency of evidence

The evidence was sufficient to permit the jury to infer that defendant parted with $25 because of fear for his life and safety and to support the conviction of defendant for common law robbery.

### 3. Crime Against Nature § 3 — second-degree sexual offense — sufficiency of evidence

The evidence was sufficient to support defendant's conviction of second-degree sexual offense where the victim testified that defendant kidnapped and threatened to kill him, that a knife and shotgun were in defendant's car, that he ran away at one point but the defendant caught him, and that he permitted defendant to perform oral sex on him because of fear for his life.

### 4. Crime Against Nature § 2 — indictment for first-degree sexual offense

An indictment was sufficient under G.S. 15-144.2(a) to charge first-degree sexual offense although it failed to allege any of the particular elements that distinguish first-degree and second-degree sexual offense.

### 5. Crime Against Nature § 1; Rape and Allied Offenses § 2 — second-degree sexual offense — sufficiency of force

The threat of serious bodily harm which reasonably induces fear thereof constitutes sufficient force for a second-degree sexual offense under G.S. 14-27.5(a)(1), and the trial court did not err in instructing that the threat of force, as well as force itself, would be sufficient to satisfy the "by force" element of second-degree sexual offense.

### 6. Crime Against Nature § 4 — second-degree sexual offense — misstatement of law — harmless error

Although the trial court in a prosecution for second-degree sexual offense may have misstated the law by referring to threats "to perform any other forceable act" upon the victim, such error was harmless where the evidence tended to show that if the sexual act was committed in response to any threat, it was in response to defendant's threats, accompanied by the display of certain deadly weapons, to kill or maim the victim, and there was no evidence of other types of threats.

State v. Berkley

7. **Crime Against Nature § 4— sexual offenses—submission of crime against nature as lesser included offense—error cured by verdict**

Any error in the trial court's submission of crime against nature as a lesser included offense of first and second-degree sexual offense was not prejudicial to defendant where the jury convicted defendant of second-degree sexual offense.

8. **Criminal Law § 126— instruction on unanimity of verdict**

The trial court's instruction that the jury's verdict "must be unanimous, that is agreed to by all twelve of you" was sufficient without a further instruction that no juror need submit to the will of the others.

9. **Criminal Law § 126.3— impeachment of verdict by juror—denial of funds to depose juror**

The trial court did not err in the denial of defendant's motion for appropriate relief on the ground that one juror had informed defense counsel that she had understood the jury instructions to require her to conform her vote to that of the majority and defendant's motion for funds to employ a reporter for the purpose of deposing such juror since evidence will not be received from jurors for the purpose of impeaching their verdict after the verdict has been received by the court and the jurors have been discharged.

APPEAL by defendant from *Tillery, Judge.* Judgments entered 11 March 1981 in Superior Court, COLUMBUS County. Heard in the Court of Appeals 5 January 1982.

Defendant was indicted for kidnapping, sexual offense, and armed robbery. According to the testimony of the victim, Robert Simms Memory, defendant stopped Memory at about 8:30 p.m. on 27 December 1980 by flashing his car lights at him. Defendant said he wanted to talk, and Memory let defendant get in his car. Defendant then stated that he was kidnapping Memory and threatened to kill him. Defendant told Memory he had a gun in the back of his pants. The two got into defendant's car. There was a knife on the dashboard and a shotgun in the back seat. Defendant stopped for gas and told Memory that he would kill him if he made a move. Defendant then drove to a field and parked there for about 2½ hours. At one point Memory ran away, but defendant caught him and took him back to the car. Defendant performed fellatio upon Memory. Memory refused to do the same to defendant, but he told defendant he would meet him the next day; and he gave defendant his father's name, address, and telephone number. Defendant took $25 from Memory's wallet "for insurance that [Memory] would show up the next day," and he drove Memory back to his car. Memory told his parents what had hap-

pened, and they contacted the police. Defendant called to arrange a meeting the next day, and the police apprehended him.

Defendant testifed that Memory stopped him by flashing his car lights, and that Memory stated that he was having problems and wanted to talk. Memory "said that he was looking for some guy that was a homosexual" and defendant suggested that they ride around for awhile. They got in defendant's car, and defendant drove while Memory talked about sex. Defendant pulled off the road "to use the bathroom," and Memory ran away. Defendant caught up with him, and Memory said that he had run "to see if [defendant] really cared enough about him to run him down." They returned to the car, and Memory suggested that they have oral sex. Defendant performed fellatio on Memory with Memory's permission. Memory started to do the same to defendant, but he stopped and said "we would wait until tomorrow." Defendant returned Memory to his car and asked to borrow some money. Memory gave him $25 and his name, address, and telephone number. Defendant testified that Memory did not seem agitated or frightened when they parted.

The jury acquitted of kidnapping but convicted of second-degree sexual offense and common law robbery. From a judgment of imprisonment, defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General Thomas B. Wood, for the State.*

*T. Craig Wright for defendant appellant.*

WHICHARD, Judge.

By his first and second assignments of error, defendant argues the court erred in refusing to dismiss all charges at the close of the State's evidence and the close of all the evidence. Only the ruling made at the close of all evidence is subject to review. *State v. Hough,* 299 N.C. 245, 262 S.E. 2d 268 (1980).

[1]  As to armed robbery and first-degree sexual offense, defendant was acquitted of these crimes. He was convicted of the lesser crimes of common law robbery and second-degree sexual offense; and these convictions render harmless any error with respect to the greater crimes, absent some showing that the verdicts of guilty as to the lesser crimes were affected thereby. *State v. Casper,*

256 N.C. 99, 122 S.E. 2d 805 (1961), *cert. denied*, 376 U.S. 927, 11 L.Ed. 2d 622, 84 S.Ct. 691 (1964); *State v. DeMai*, 227 N.C. 657, 44 S.E. 2d 218 (1947); *State v. Wynn*, 25 N.C. App. 625, 214 S.E. 2d 274, *cert. denied*, 288 N.C. 252, 217 S.E. 2d 677 (1975); *State v. Sallie*, 13 N.C. App. 499, 186 S.E. 2d 667, *cert. denied*, 281 N.C. 316, 188 S.E. 2d 900 (1972); *State v. Keyes*, 8 N.C. App. 677, 175 S.E. 2d 357, *cert. denied*, 277 N.C. 116 (1970). No such showing has been made.

[2]   As to common law robbery, defendant contends the evidence is insufficient because it failed to establish that he subjected Memory to threats of harm if Memory did not part with his money. He relies on his testimony and Memory's testimony that defendant said he took the money "for insurance that [Memory] would show up the next day" to prove that (1) he did not threaten or intend to harm Memory if Memory refused to part with the money, and (2) Memory did not part with the money as a result of his threats or from fear of harm.

Memory's testimony, however, indicated that he feared for his life and safety throughout the incident with defendant. Memory testified that defendant left him with two dollars, but that "he could have had it if he had wanted to." The entirety of Memory's testimony clearly permitted the inference that he parted with the $25 because of fear for his life and safety. "Intent must . . . be determined from all the facts and circumstances. Absent direct evidence, specific intent is 'ordinarily to be proved by facts and circumstances from which it may be inferred and . . . the jury may consider the acts and conduct of the defendant and the general circumstances existing at the time . . . .'" *State v. Whitaker*, 55 N.C. App. 666, 286 S.E. 2d 640, 641-42 (1982). The acts and conduct of defendant, considered in light of the general circumstances existing at the time, permitted the jury to infer that defendant took money from Memory "against his will, by . . . putting him in fear." *State v. Moore*, 279 N.C. 455, 457, 183 S.E. 2d 546, 547 (1971). The evidence thus was sufficient to sustain the conviction for common law robbery.

[3]   As to second-degree sexual offense, the evidence is sufficient to sustain the conviction. Defendant argues there is no evidence as to the use of force, a necessary element of the offense; but the evidence refutes his contention. Memory testified that defendant

kidnapped and threatened to kill him, that a knife and a shotgun were in defendant's car, and that he ran away at one point but the defendant caught him. Memory further testified:

> And he took me back to the car. He had hold of both my arms, and walked me back to the car. I was still scared. We got in the car, and I looked at him, and he looked at me. I told him that if he wouldn't kill me that I would do anything he wanted me to do. He started kissing me and I scrunched away. And then he kept on. After I had just went ahead and let him do what he wanted to. . . .
>
>         . . . .
>
>         I never consented to the oral sex where I told him to go ahead and do what he had to do, to let me live. I did not want him to perform the act on me. The gun and knife were in the same position at all times.

This evidence, in the light most favorable to the State, is sufficient to show that the sexual act was committed by force and against Memory's will. *See State v. Carter*, 265 N.C. 626, 144 S.E. 2d 826 (1965); *State v. Thompson*, 227 N.C. 19, 40 S.E. 2d 620 (1946). Defendant's first two assignments of error are overruled.

[4] In his third assignment of error, defendant argues that the sexual offense indictment charged only second-degree sexual offense and the trial court therefore erred in instructing as to first-degree sexual offense and submitting this as a possible verdict. The indictment fails to allege any of the particular elements that distinguish first-degree and second-degree sexual offense. *See* G.S. 14-27.4 and .5. G.S. 15-144.2(a) (Cum. Supp. 1981), however, authorizes, for sexual offense, an abbreviated form of indictment which omits allegations of these elements. *See generally State v. Lowe*, 295 N.C. 596, 247 S.E. 2d 878 (1978) (upholding the constitutionality of G.S. 15-144.1, which authorizes an abbreviated form of indictment for rape). The indictment here sufficiently complied with G.S. 15-144.2.

The error assigned relates to the greater crime of first-degree sexual offense; and the jury acquitted defendant of that crime, convicting of the lesser crime of second-degree sexual offense. Any error with respect to submitting the question of defendant's guilt of the more serious crime is thus harmless. *State*

*v. Casper, supra; State v. DeMai, supra; State v. Wynn, supra; State v. Sallie, supra; State v. Keyes, supra.* Defendant has not shown that his conviction was affected by consideration of his possible guilt of the more serious crime.

[5] Defendant's fourth assignment of error relates to the court's explanation of the element"by force" in the instructions on first-degree sexual offense. Although defendant was acquitted of first-degree sexual offense, this alleged error cannot be summarily disregarded as harmless, because the court referred to its instructions on first-degree sexual offense in defining second-degree sexual offense, the crime of which defendant was convicted.

Specifically, defendant argues the court erred by impliedly instructing that the threat of force, a well as force itself, would be sufficient to satisfy this element. Engaging in a sexual act with another person "by force and against the will of the other person" constitutes second-degree sexual offense. G.S. 14-27.5(a)(1). The element "by force" has long been a part of the law of rape in this State. We thus look to the interpretation of this element in rape cases for guidance. In *State v. Roberts*, 293 N.C. 1, 13, 235 S.E. 2d 203, 211 (1977), we find the following:

> The force necessary to meet the latter requirement, as explained on numerous occasions by this Court, need not be physical force but may take the form of fear, fright or coercion. *State v. Hines*, 286 N.C. 377, 211 S.E. 2d 201 (1975); *State v. Primes*, 275 N.C. 61, 165 S.E. 2d 225 (1969). The mere *threat* of serious bodily harm which reasonably induces fear thereof constitutes the requisite force. *State v. Burns*, 287 N.C. 102, 214 S.E. 2d 56 (1975); *State v. Henderson*, 285 N.C. 1, 203 S.E. 2d 10 (1974).

*Accord, State v. Burns*, 287 N.C. 102, 214 S.E. 2d 56, *cert. denied*, 423 U.S. 933, 96 S.Ct. 288, 46 L.Ed. 2d 264 (1975), and cases cited. We hold that the threat of serious bodily harm which reasonably induces fear thereof likewise constitutes sufficient force for a second-degree sexual offense under G.S. 14-27.5(a)(1). The instruction challenged is thus without error.

[6] After explaining the elements of first-degree sexual offense and giving a mandate thereon, the court instructed the jury as follows:

Now, if you do not find him guilty of first-degree sexual offense, you must consider whether he is guilty of a second-degree sexual offense.

And second-degree sexual offense differs from first-degree in that it is not necessary for the State to prove beyond a reasonable doubt that the defendant employed or displayed a dangerous or deadly weapon or an article which Simms Memory reasonably believed was a dangerous or deadly weapon.

So, I charge you that if you reach that possible choice of verdicts, and if you find; beyond a reasonable doubt, that . . . Reginal Berkley engaged in fellatio with Simms Memory; and that he did so by threatening his life, or by otherwise threatening to maim him, or to perform any other forcible act upon him, and that this was sufficient to overcome any resistance which Simms Memory might have made; and that Simms Memory did not consent, and that it was against [his] will, it would be your duty to return a verdict of second-degree sexual offense.

If you do not so find or have a reasonable doubt, give him the benefit of that doubt and do not find him guilty of that charge.

Defendant's fifth and sixth assignments of error relate to these instructions. Defendant argues the explanation of second-degree sexual offense is inadequate and confusing and that the court misstated the element of force in the mandate as to second-degree sexual offense. We reject these arguments. The court carefully enumerated the elements of first-degree sexual offense and then explained that second-degree sexual offense differs in the omission of one designated element. In this, we find no error.

It is a well-recognized rule of law that the trial judge's charge must be construed contextually as a whole, and when, so construed, it presents the law of the case in such a manner as to leave no reasonable cause to believe the jury was misled or misinformed, an exception thereto will not be sustained. 7 N.C. Index 2d, Trial § 33.

*State v. Henderson,* 285 N.C. 1, 19, 203 S.E. 2d 10, 22 (1974), *death sentence vacated,* 428 U.S. 902, 49 L.Ed. 2d 1205, 96 S.Ct. 3202

(1976). We find no reasonable cause to believe the jury was misled or misinformed as to the elements of second-degree sexual offense, and we find no prejudicial error in the mandate as to that offense. The court may have misstated the law by referring to threats "to perform any other forcible act upon [Memory]." A threat of "any" forcible act will not necessarily suffice. *See generally* 75 C.J.S., Rape § 15 (1952). We nevertheless find no prejudicial error in light of the evidence in this case, which tends to show that if the sexual act was committed in response to any threat, it was in response to defendant's threats, accompanied by the display of certain deadly weapons, to kill or maim Memory. We have held, *supra*, that threats of serious bodily harm which reasonably induce fear thereof constitute sufficient force for second-degree sexual offense. We conclude that, since there was no evidence of other types of threats, the reference to other types of threats could not have been prejudicial. *Cf. State v. Johnson*, 28 N.C. App. 166, 220 S.E. 2d 632 (1975), *disc. review denied*, 289 N.C. 453, 223 S.E. 2d 162 (1976). These assignments of error are overruled.

[7]  The court submitted crime against nature as a lesser included offense of first and second-degree sexual offense. By his seventh and eighth assignments of error, defendant argues that crime against nature is not included within the allegations of the sexual offense indictment, and that the trial court erred in instructing on and submitting it as a possible verdict. We note that G.S. 15-144.2(a), the statute authorizing the abbreviated form of sexual offense indictment, provides that such an indictment "will support a verdict of guilty of a sex offense in the first degree, a sex offense in the second degree, an attempt to commit a sex offense or an assault."

*State v. Jones*, 287 N.C. 84, 214 S.E. 2d 24 (1975), was a case of homicide in which the defendant was convicted of second-degree murder. The Supreme Court stated:

> Finally, we agree with defendant's contention that the evidence did not require the submission of the lesser included offense of voluntary manslaughter; however, its submission to the jury was prejudicial to the State, not to defendant. *State v. Accor and State v. Moore*, 281 N.C. 287, 188 S.E. 2d 332; *State v. Rogers*, 273 N.C. 208, 159 S.E. 2d 525; *State v.*

> *Chase*, 231 N.C. 589, 58 S.E. 2d 364. Even had there been prejudice in the submission of voluntary manslaughter to the jury, such prejudice was cured by the fact that the jury never reached the consideration of this lesser included offense.

*Id.* at 101, 214 S.E. 2d at 36. We conclude that any error here in submitting crime against nature as a lesser included offense was harmless.

Defendant's ninth, tenth, eleventh and twelfth assignments of error each deal with various instructions as to either armed robbery or common law robbery. As indicated above, any error as to armed robbery was harmless, because the jury acquitted defendant thereof. We have examined the instructions as to common law robbery, and we find no prejudicial error.

[8] Defendant's thirteenth assignment of error relates to the following instruction: "Your verdict in each of these cases, whatever it is, must be unanimous, that is agreed to by all twelve of you." Defendant argues the instruction was insufficient, and that the court should have instructed that no juror need submit to the will of the others. Our Supreme Court rejected a similar argument in *State v. Ward*, 301 N.C. 469, 272 S.E. 2d 84 (1980). The court wrote:

> Defendant's next argument relates to the following charge to the jurors:
>
> > Now, the court instructs you that a verdict is not a verdict unless and until all twelve jurors agree unanimously as to what your decision shall be; that is, all twelve minds agree on a verdict of guilty or not guilty.
>
> Defendant argues that the court should have also instructed that individual jurors were not to surrender their own convictions solely in order to reach a verdict. We note, however, that defendant requested no instructions to this effect, and we are therefore not readily disposed to hear his complaint now. *See State v. Poole*, 25 N.C. App. 715, 214 S.E. 2d 774 (1975). Furthermore, the instruction as given is in accordance with the law of this State as set out in G.S. 15A-1235 as follows: "Before the jury retires for deliberation, the judge *must* give an instruction which informs the jury that in order

to return a verdict, all 12 jurors must agree to a verdict of guilty or not guilty." [Emphasis added.] We find no error.

*Id.* at 478-479, 272 S.E. 2d at 90. This assignment of error is overruled.

**[9]** Defendant's last two assignments of error relate to his posttrial motions. Sometime after the verdict was returned, defense counsel moved for appropriate relief on grounds that one of the jurors had contacted him the night before and informed him she had understood the jury instructions to require her to conform her vote to that of the majority. The motion was denied. Defense counsel then moved for funds with which to employ a reporter for the purpose of deposing this juror "for any future purposes for which [the deposition] might be used . . . ." This motion also was denied. "It is well settled in North Carolina that after a verdict has been rendered and received by the court, and jurors have been discharged, jurors will not be allowed to attack or overthrow their verdict, nor will evidence from them be received for such purpose." *State v. Cherry,* 298 N.C. 86, 100, 257 S.E. 2d 551, 560 (1979), *cert. denied,* 446 U.S. 941, 100 S.Ct. 2165, 64 L.Ed. 2d 796 (1980); *accord, State v. Hollingsworth,* 263 N.C. 158, 139 S.E. 2d 235 (1964). We thus find no error in the trial court's rulings.

No error.

Judges CLARK and BECTON concur.