STATE OF NORTH CAROLINA
v.
WILLIAM CHARLES KOHLS.
No. COA07-327
Court of Appeals of North Carolina.
Filed November 20, 2007
This case not for publication
Roy Cooper, Attorney General, by David L. Elliott, Assistant Attorney General, for the State.
Brian Michael Aus, for defendant-appellant.
MARTIN, Chief Judge.
William Charles Kohls ("defendant") appeals from judgments entered upon jury verdicts finding him guilty of one count of second degree sexual offense pursuant to N.C.G.S. § 14-27.5(a), and one count each of second degree arson and conspiracy to commit second degree arson pursuant to N.C.G.S. § 14-58.
As relevant to the issues properly before this Court, evidence presented at defendant's trial tended to show that on 23 September 2005, defendant's wife Windy Kohls returned home from work to the mobile home she shared with defendant and their two minor children. Mrs. Kohls testified that she wanted to tell defendant that she "needed space" because he was unemployed and she was "just tired of going down the same path over and over." However, she testified that she was scared to talk with defendant because he had "been violent before," so it "took [her] a while before [she] could get up the courage to talk to him" because she "didn't know what was going to happen."
Mrs. Kohls testified that, after dinner, she was standing in the kitchen and defendant was sitting in his recliner. Mrs. Kohls told defendant that she "needed some space for the weekend" and was going to stay with her father, with whom defendant did not get along. After some heated discussion about household finances, Mrs. Kohls told defendant she "might as well be by [her]self." Mrs. Kohls testified that she "guess[ed] that struck him the wrong way, . . . [so she] got quiet, and . . . sat down at [her] computer," which was in the same room with defendant. Without saying anything, defendant "came up from behind [her]" and "grabbed [her] around [her] neck and threw [her] out of [her] chair onto the floor." Mrs. Kohls "crawled" over to a futon and curled into a "fetal position" while defendant "stood over the top of [her] pounding [her] in the back of the head." She heard defendant unzip his trousers and he told her that he was "fixing to p____ all over" her. Mrs. Kohls testified that she tried to crawl away but that defendant "flipped [her] over on [her] back and . . . sat down on top of [her], basically straddling [her] chest." Mrs. Kohls said that defendant choked her while repeatedly asking her whether she needed her space because there was "somebody else." According to Mrs. Kohls's testimony, defendant then put his fist on the top of her chest so she could not move. While this was occurring, their oldest son entered the room and asked what was going on. Defendant told him that "[h]e needed to go the f____ back to sleep."
Mrs. Kohls testified that defendant noticed that she was wearing makeup, and pulled on her eyelid saying, "I thought I told you you were not to wear makeup." He told her, "Well, I'll give you a good reason to wear makeup. . . . I'll just take a knife and cut up your face. . . . Or better yet[,] I'll just pour gasoline on your face and light a match."
Defendant got off of Mrs. Kohls and returned to his recliner, telling her, "If you go press charges, I'll kill you." Mrs. Kohls stayed on the floor because she was frightened. Defendant told Mrs. Kohls that she was not to go to work the next day and stood beside her while she called her employer to say she would not be at work the next day. Mrs. Kohls picked up her computer chair off the floor and sat down in the chair "in a daze" while "[e]verything was quiet for a little while." After a period of time, the duration of which Mrs. Kohls was uncertain, defendant told her, "I want you to suck my d____." She initially refused, but after defendant "balled up his fists and pressed them into the side of his chair . . . recliner, and just gave [her] a . . . it was like an evil look, . . . [she] felt right then if [she] didn't do it it was just going to be worse." Mrs. Kohls asked defendant if she could pull her chair over, "even though [she] had already told him no," because she did not feel like she could refuse him. She testified that she started to fellate defendant and she "felt like [she] was gagging" and "felt like [she] was going to throw up." She told defendants he had to go to the bathroom. Defendant followed her into the bathroom and, as she was sitting on the toilet, put his hands on the back of her head and put his penis in her mouth and thrust it in her throat. He instructed her to swallow his ejaculate and told her that if she did not, he would "p____ in [her] mouth." Defendant then returned to his recliner.
Early the following morning, Mrs. Kohls left the mobile home with her youngest son and went to her father's home. She reported the events of the previous night to a magistrate. Later that morning, she returned to her home to get some belongings and discovered that some of her personal belongings had been destroyed. The mobile home was destroyed by fire early on the morning of 26 September 2005.
Detective Sergeant Tammy Odom of the Wayne County Sheriff's Office investigated the incidents. She interviewed defendant on two occasions and defendant made statements to her in which he admitted striking his wife, and that she had fellated him, but denied that he had forced her to do so. In his first statement, defendant also said that he called a friend, Nathan Britt, from jail and told him to "make [the trailer] disappear and let it be a cookout. I didn't tell him to burn it down, in those words." In his second statement, he admitted that he told his brother, Brian Kohls, to burn the trailer. The State also offered the testimony of Brian Kohls that defendant had asked him to burn the trailer and that defendant called him after the fire to make sure it had been burned. Defendant laughed when he learned that the trailer had been destroyed.
Defendant testified in his own behalf. He admitted that he asked Mrs. Kohls "about 6 to 8 times" why she wanted space, that he "grabbed her by the side of her neck," and that they then "both went to the floor." He testified that he "did pop [Mrs. Kohls] in the back of the head," but asserted that he "hurt her feelings more than [he] hurt her physically." He denied that he threatened to cut her. Defendant also admitted that he told Mrs. Kohls to stay home from work the next day, but said that he made the request because he wanted to surprise her by taking her to a restaurant in Myrtle Beach.
Defendant testified that he instructed Mrs. Kohls to perform fellatio on him in a manner consistent with Mrs. Kohls's account. However, defendant testified that Mrs. Kohls did not try to refuse his instruction, and that she told him to come with her to the bathroom where she completed the sexual act as she used the toilet.
The record on appeal contains four assignments of error. In his brief, however, defendant has brought forward arguments in support of only the first and fourth assignments of error; therefore, we must consider that he has abandoned his second and third assignments of error. N.C.R. App. P. 28(a) (2007) ("Questions raised by assignments of error in appeals from trial tribunals but not then presented and discussed in a party's brief, are deemed abandoned."); N.C.R. App. P. 28(b)(6) (2007) ("Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned.").
In his first assignment of error, defendant asserts as error the trial court's denial of his motion to dismiss the charge of second degree sexual offense due to the insufficiency of the evidence. Our standard of review of a trial court's ruling with respect to a defendant's motion to dismiss in a criminal prosecution is well established; "[t]he trial judge must decide if there is substantial evidence of each element of the offense charged." State v. Etheridge, 319 N.C. 34, 47, 352 S.E.2d 673, 681 (1987). In doing so, the trial court "must view the evidence in the light most favorable to the [S]tate, giving the [S]tate the benefit of every reasonable inference that might be drawn therefrom." Id. (citing State v. Witherspoon, 293 N.C. 321, 237 S.E.2d 822 (1977)). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (citing State v. Smith, 300 N.C. 71, 265 S.E.2d 164 (1980)). "'What is substantial evidence is a question of law for the court. What that evidence proves or fails to prove is a question of fact for the jury.'" State v. Powell, 299 N.C. 95, 101, 261 S.E.2d 114, 119 (1980) (quoting State v. Stephens, 244 N.C. 380, 38384, 93 S.E.2d 431, 43334 (1956)). "[C]ontradictions and discrepancies [in the evidence] are for the jury to resolve and do not warrant dismissal; and all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is to be considered by the court in ruling on the motion." Id. at 99, 261 S.E.2d at 117 (citing State v. Thomas, 296 N.C. 236, 250 S.E.2d 204 (1978); State v. McKinney, 288 N.C. 113, 215 S.E.2d 578 (1975)). In other words, "[i]f the evidence supports that a reasonable inference of defendant's guilt may be drawn from the circumstances, then 'it is for the [jurors] to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty.'" State v. Warren, 348 N.C. 80, 102, 499 S.E.2d 431, 443 (1998) (quoting State v. Rowland, 263 N.C. 353, 358, 139 S.E.2d 661, 665 (1965)) (alteration in original).
N.C.G.S. § 14-27.5 provides, in part, that "[a] person is guilty of a sexual offense in the second degree if the person engages in a sexual act with another person . . . [b]y force and against the will of the other person . . . ." N.C. Gen. Stat. § 14-27.5(a)(1) (2005). "Fellatio is included as a sexual act within the meaning of the statute." State v. Jacobs, 128 N.C. App. 559, 563, 495 S.E.2d 757, 760 (1998) (citing State v. Baker, 333 N.C. 325, 426 S.E.2d 73 (1993)). "'The force necessary to meet the ["by force"] requirement, as explained on numerous occasions by this Court, need not be physical force but may take the form of fear, fright or coercion.'" State v. Berkley, 56 N.C. App. 163, 168, 287 S.E.2d 445, 449 (1982) (citations omitted). "'The mere threat of serious bodily harm which reasonably induces fear thereof constitutes the requisite force.'" Id. at 168, 287 S.E.2d at 449 (citations omitted). "Threats need not be explicit so long as the totality of circumstances allows a reasonable inference that such compulsion was the unspoken purpose of the threat." Etheridge, 319 N.C. at 45, 352 S.E.2d at 680 (citing State v. Barnette, 304 N.C. 447, 284 S.E.2d 298 (1981)).
Defendant contends that the totality of the circumstances in the case sub judice was insufficient to support the element of constructive force for the charge of second degree sexual offense. Defendant argues that he and Mrs. Kohls had a history of domestic violence and that the events of 23 September 2005 were consistent with "the norm of their relationship" and did not rise to the level of constructive force. We do not find defendant's argument persuasive.
Viewed in the light most favorable to the State, the evidence in this case was sufficient to submit the charge of second degree sexual offense to the jury. Defendant and Mrs. Kohls both testified that defendant grabbed Mrs. Kohls's neck while she sat in a chair and that they both went to the floor. Both testified that defendant hit Mrs. Kohls in the back of the head a number of times while she lay on the floor. There was evidence that defendant sat on top of Mrs. Kohls while she lay on the floor, and that he choked her and put his fist on top of her chest so she could not move. Defendant threatened to cut her face and, alternatively, that he would pour gasoline on her face and set her on fire. Mrs. Kohls testified that defendant threatened to kill her if she pressed charges for the assault. Then, after demanding that she fellate him, defendant "balled up his fists," "pressed them into the side of his chair," and gave her an "evil look," causing her to be afraid and to believe she had no choice but to comply with his demand. The foregoing evidence is clearly substantial evidence of constructive force sufficient to withstand defendant's motion to dismiss the charge of second degree sexual offense and we find no error in the trial court's denial of the motion.
In his remaining assignment of error, defendant contends the trial court erred by failing to intervene ex mero motu during the State's closing argument. Defendant asserts that the prosecutor's remarks went beyond proper argument and conveyed to the jury the notion that the citizens of the community were demanding that defendant be convicted and punished. No objection was interposed to the prosecutor's argument at trial.
"As a general rule, counsel possess wide latitude 'to argue the facts which have been presented, as well as reasonable inferences that may be drawn therefrom.'" State v. Nicholson, 355 N.C. 1, 42, 558 S.E.2d 109, 137 (2002) (quoting State v. Williams, 317 N.C. 474, 481, 346 S.E.2d 405, 410 (1986)); see also State v. Graves, 252 N.C. 779, 781, 114 S.E.2d 770, 771 (1960). "'Whether counsel abuses this privilege is a matter ordinarily left to the sound discretion of the trial judge . . . .'" State v. McNeil, 350 N.C. 657, 685, 518 S.E.2d 486, 503 (1999) (quoting State v. Covington, 290 N.C. 313, 328, 226 S.E.2d 629, 640 (1976)). If a defendant fails to object to an adversary's closing arguments, "'defendant must establish that the remarks were so grossly improper that the trial court abused its discretion by failing to intervene ex mero motu.'" State v. Pulley, 180 N.C. App. 54, 68, 636 S.E.2d 231, 242 (2006) (quoting State v. Grooms, 353 N.C. 50, 81, 540 S.E.2d 713, 732 (2000)). "Defendant must establish that the prosecutor's comments 'so infected the trial with unfairness that they rendered the conviction fundamentally unfair.'"Id. Under this standard, "'[o]nly an extreme impropriety on the part of the prosecutor will compel this Court to hold that the trial judge abused his discretion in not recognizing and correcting ex mero motu an argument that defense counsel apparently did not believe was prejudicial when originally spoken.'" Nicholson, 355 N.C. at 42, 558 S.E.2d at 137 (quoting State v. Richardson, 342 N.C. 772, 786, 467 S.E.2d 685, 693 (1996)) (alteration in original) (internal quotation marks omitted).
The argument to which defendant now contends the trial court should have intervened ex mero motu was as follows:
So one thing that we have learned for certain by listening to this case and learning about William Kohls is that if this guy is not stopped, Windy Kohls's days are numbered. He said what he is going to do, and how, if he's mad about . . . his wife saying I need some space, how mad is he now about Windy testifying against him? His wife. His little woman he likes to control has gotten up here and told you how it is. How mad is he now? But Windy is not our only concern. The citizens of Wayne County are depending on you. We cannot have this man out there walking around doing what he does. We can't have it. So I'm asking you to please do what you know is right, what you know the State has proven to you, and find him guilty.

(Emphasis added.) Our Supreme Court has "long held that arguments are to be evaluated in context." State v. Larrimore, 340 N.C. 119, 160, 456 S.E.2d 789, 811 (1995) (citations omitted). While "[t]he State must not ask the jury 'to lend an ear to the community rather than a voice,'" McNeil, 350 N.C. at 687, 518 S.E.2d at 505 (quoting State v. Scott, 314 N.C. 309, 312, 333 S.E.2d 296, 298 (1985)) (internal quotation marks omitted), "[i]t is not . . . improper to remind the jurors that ' they are the voice and conscience of the community.'" Id. at 68788, 518 S.E.2d at 505 (quoting State v. Brown, 320 N.C. 179, 204, 358 S.E.2d 1, 18 (1987)). "Permitting the jury to act as the voice and conscience of the community is required because the very reason for the jury system is to temper the harshness of the law with the 'commonsense judgment of the community.'" Scott, 314 N.C. at 31112, 333 S.E.2d at 298 (quoting Taylor v. Louisiana, 419 U.S. 522, 530 (1975)).
Employing these standards and considering the remarks in the context of the entire argument, we do not believe the prosecutor's argument invited the jurors to ignore the evidence and convict defendant because the citizens of the community demanded that he be punished. We do not find the State's argument grossly improper and hold that the trial court did not abuse its discretion by failing to intervene ex mero motu.
Defendant brought forward additional arguments in his brief directed to assignments of error not contained in the record on appeal and as to which his motion to amend the record was denied. Therefore, the arguments are not properly before us and we may not consider them.
No Error.
Judges STROUD and ARROWOOD concur.
Report per Rule 30(e).