STATE OF NORTH CAROLINA v. REBECCA ARNOLD NEVILLE

No. COA09-412

(Filed 19 January 2010)

**1. Appeal and Error— preservation of issues—sufficiency of evidence**

Defendant did not preserve for appellate review the question of whether there was sufficient evidence of second-degree murder where defendant moved to dismiss the charge of first-degree murder, but neither moved to dismiss second-degree murder nor argued that the evidence of any of the elements of second-degree murder was insufficient.

**2. Homicide— second-degree murder—sufficiency of evidence—driving car into yard**

Defendant's argument that the evidence in a second-degree murder prosecution did not show a specific intent to harm a particular person was irrelevant. Moreover, there was ample evidence from which a jury could find that defendant intentionally drove in a manner so reckless as to support a finding of malice.

**3. Evidence— witness's impression—admission not prejudicial**

The admission of the impression of the victim's sibling that defendant intentionally drove her car into the victim was not prejudicial where the jury acquitted defendant of first-degree murder. Defendant did not show that admission of the testimony contributed to her conviction for second-degree murder.

Appeal by Defendant from judgment entered 25 June 2008 by Judge James E. Hardin, Jr., in Edgecombe County Superior Court. Heard in the Court of Appeals 17 September 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Kevin Anderson, for the State.*

*William D. Spence, for Defendant.*

BEASLEY, Judge.

Defendant (Rebecca Neville) appeals from judgment entered upon her conviction of second-degree murder. We conclude the Defendant had a fair trial, free of reversible error.

STATE v. NEVILLE

[202 N.C. App. 121 (2010)]

On 12 August 2006 Defendant's vehicle struck four-year-old Keligah Randolph (the victim), who died from the resulting injuries. In June 2008 Defendant was tried non-capitally for the first-degree murder of the victim. At trial, Stephanie Randolph testified that in August 2006 she lived in Rocky Mount, North Carolina, where she worked at a restaurant. Randolph had four children, including the victim, who were cared for by a local day-care center while Randolph was at work. Because Randolph did not have a car, the day care center provided transportation for the children to and from the center.

On 12 August 2006, Randolph finished work at the restaurant at around midnight and went home. Her children were not home, so Randolph made several phone calls to locate them. Randolph received a call from her nine-year-old daughter, Jessica Applewhite, who reported that she and the other three children were with Defendant. Randolph told Jessica to ask Defendant to bring them home. When Defendant arrived at Randolph's house, the children went inside to go to bed, while Randolph and Defendant stood on Randolph's front porch and argued. Randolph was upset because the day care center did not have permission to release her children to Defendant. Their exchange became heated and Randolph told Defendant to leave.

Defendant drove away, but returned a few minutes later, and they argued again. When Randolph refused to allow Defendant to come inside and use Randolph's bathroom, Defendant urinated in Randolph's yard. Randolph told Defendant to leave; Defendant drove away but returned in several minutes. Defendant apologized, they hugged, but then started to argue. Defendant left Randolph's yard and returned again. Randolph left the porch and went down to the yard, threatened to call the police if Defendant did not leave, and shoved Defendant off the curb. The conflict escalated to a physical fight, with Randolph and Defendant shoving and hitting each other in the middle of the street. By this time, Randolph's children had gotten out of bed and were watching from the porch.

Randolph testified that Defendant got back into her car with an "evil" look on her face. Randolph heard Defendant "start the car and throw it in reverse and pull up in [her] yard," and Randolph ran to the side of the house. When Randolph saw the victim trying to climb the steps of her front porch, she ran back to the front of the house, but could not get there in time. She heard skidding tires, the car being shifted into reverse, and then a "big thump" as Defendant's car hit the victim, who was at the steps of Randolph's front porch.

Dr. M.G.F. Gilliland testified as an expert in forensic pathology. She told the jury that, when the victim was struck by Defendant's car, he suffered very serious injuries and died almost instantly. Rocky Mount Police Department Officer Chris Mosley testified that he was a Traffic Safety officer who was trained to investigate car accidents. Without objection, Mosley was tendered and accepted as qualified to offer opinion testimony about the results of his investigation. Mosley testified that the distance from the curb to Randolph's porch was about seventeen feet and that he observed "acceleration marks" where Defendant's car went over the five-inch curb into Randolph's yard. Rocky Mount Police Department Special Officer Wayne Harrell, who also investigated the case, corroborated Mosley's testimony that there were "acceleration marks" where Defendant's car went into Randolph's yard. Harrell also testified that he had tested Defendant's car and determined that it idled normally, with no apparent mechanical malfunctions.

At the close of the State's evidence the trial court denied Defendant's motion to dismiss the charge of first-degree murder.

Other evidence will be discussed as pertinent to the appellate issues. Following the presentation of evidence, defense counsel renewed his motion to dismiss the charge of first-degree murder on the grounds that he "d[id] not think there is evidence of any specific intent." The court denied Defendant's motion, and instructed the jury on possible verdicts of first-degree murder, second-degree murder, voluntary manslaughter, involuntary manslaughter, or not guilty. The jury returned a verdict of guilty of second-degree murder, and the trial court sentenced Defendant to 120 to 153 months in prison. From this judgment and conviction, Defendant appeals.

———————————

[1] Defendant argues first that the trial court erred by denying her motion to dismiss the charge against her at the close of all the evidence "on the grounds that all the evidence was insufficient to establish every element of second degree murder." We conclude that Defendant failed to preserve this issue for appellate review. We further conclude that even assuming, *arguendo*, that the issue were preserved, it is without merit.

At the end of the State's evidence, Defendant moved to dismiss the charge of first-degree murder:

> THE COURT: . . . The State of North Carolina having rested its case. Are there motions on behalf of the defendant?

DEFENSE COUNSEL: Judge, first I'd move at this time to dis-miss the first-degree murder indictment. . . . [S]everal of the essential elements even in the light most favorable to the State, in my opinion, have not been met. I believe what you have, at this point, is something less than first degree murder. . . . And we would just ask you to consider, at this point, dismissing the first-degree murder indictment.

At the close of all the evidence, Defendant renewed his motion to dismiss the first-degree murder charge:

THE COURT: All right. . . . Are there motions on behalf of the defendant at the close of all the evidence?

DEFENSE COUNSEL: There are, Judge. At this time, . . . I would also again renew my motion to dismiss the charge of first-degree murder. Basically, the same argument I told you at the end of the State's evidence. I do not think there is evidence of any specific intent. And I do not feel like that that should get to the jury at this point. Otherwise, I don't have any other motions or objections.

. . . .

THE COURT: All right. At the close of all the evidence, the de-fendant having made the motion to dismiss specifically the charge of first-degree murder, but as it relates to all lesser poten-tial included offenses, the defendant's motion is denied.

(emphasis added). Defendant neither moved to dismiss the charge of second-degree murder, nor argued to the trial court that there was insufficient evidence of any of the elements of second-degree murder. Thus, Defendant failed to preserve for appellate review the suffi-ciency of the evidence of the charge. N.C.R. App. P. 10(b)(1) ("to pre-serve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the spe-cific grounds for the ruling party desired the court to make"). Further, even assuming, *arguendo*, that the issue was preserved, our review of the record reveals that the evidence was more than adequate to sub-mit the charge of second-degree murder to the jury.

[2] "The essential elements of second[-]degree murder are an unlaw-ful killing with malice, but without premeditation or deliberation." *State v. Brower*, 186 N.C. App. 397, 403, 651 S.E.2d 390, 394 (2007), *disc. review denied*, 362 N.C. 363, 661 S.E.2d 742 (2008) (citing N.C. Gen. Stat. § 14-17 [(2009)]). Defendant argues that there was insuffi-

cient evidence that she "committed an intentional act aimed at harming someone" and "no evidence that defendant aimed the car at anyone." However:

> "Intent to kill is not a necessary element of second-degree murder, but there must be an intentional act sufficient to show malice." Accordingly, . . . it was necessary for the State to prove only that defendant had the intent to perform the act of driving in such a reckless manner as reflects knowledge that injury or death would likely result, thus evidencing depravity of mind. The State was not required to show that defendant had a conscious, direct purpose to do specific harm or damage, or had a specific intent to kill.

*State v. Rich,* 351 N.C. 386, 395, 527 S.E.2d 299, 304 (2000) (quoting *State v. Brewer,* 328 N.C. 515, 522, 402 S.E.2d 380, 385 (1991)). Accordingly, Defendant's argument, that the evidence failed to show a specific intent to harm any particular person, is irrelevant to our determination of the sufficiency of the evidence of second-degree murder.

Moreover, we conclude that there was ample evidence from which a jury could find that Defendant "had the intent to perform the act of driving in such a reckless manner as reflects knowledge that injury or death would likely result[.]" *Rich,* 351 N.C. at 395, 527 S.E.2d at 304. Defendant asserts that she "testified that the car's motion occurred because it went out of control and the State offered no evidence to the contrary." We disagree, and conclude that the State's evidence was more than sufficient to allow the jury to find that the victim's death was not due to Defendant's "losing control" of her vehicle. The testimony of all the eyewitnesses, including Defendant, showed that, at the time she ran over the victim, Defendant was agitated, angry, and not exhibiting appropriate personal self-control. For example, just before Defendant drove her car into the victim, she urinated in Randolph's yard and fought with Randolph. Law enforcement officers testified that there were "acceleration marks" where Defendant drove into the yard, and that Defendant's car was operating properly at the time of the incident. Randolph testified that Defendant had an "evil look" just before she drove her car into the victim. And, it was undisputed that, at the time Defendant's car struck the victim, the yard was dark and there were several small children in the yard. Defendant's own testimony was that she did not know where the children were standing when she started her car and didn't even know she had hit the victim. We easily conclude that there was

sufficient evidence from which a jury could find that Defendant intentionally drove in a manner so reckless as to support a finding of malice. This assignment of error is overruled.

[3] Defendant's remaining arguments are addressed to the trial court's admission of Jessica's testimony that her "impression" was that Defendant drove her car into the victim "on purpose just to get back at my Mom." Defendant argues that admission of this evidence constitutes reversible error. We disagree.

The challenged testimony consists of the following:

PROSECUTOR: And you saw [Defendant] drive.

JESSICA: Yes.

PROSECUTOR: Did it make an impression on you?

JESSICA: Yes.

PROSECUTOR: What impression did it make on you?

JESSICA: She did it on purpose just to get back at my mom.

PROSECUTOR: Who are you saying did what on purpose?

JESSICA: [Defendant.]

PROSECUTOR: Did what?

JESSICA: Hit my brother.

PROSECUTOR: What did it look like she was trying to do?

JESSICA: To get back at my mom just for fussing at her.

However, "admission of this evidence went solely to the question of premeditation and deliberation. The jury's verdict of second-degree murder acquitted defendant of the charge of murder in the first[-]degree and therefore rendered harmless any prejudice which might have arisen from its admission." *State v. Williams*, 288 N.C. 680, 699, 220 S.E.2d 558, 571 (1975). Defendant concedes that evidence of her intent "is not an element of murder in the second[-]degree." "[A]s the jury, by their verdict, negatived the existence of premeditation in doing the act, the testimony was harmless[.]" *State v. Vann*, 162 N.C. 534, 539, 77 S.E. 295, 297 (1913).

See also, e.g., *State v. Berkley*, 56 N.C. App. 163, 165, 287 S.E.2d 445, 447 (1982):

STATE v. NEVILLE

[202 N.C. App. 121 (2010)]

As to armed robbery and first-degree sexual offense, defendant was acquitted of these crimes. He was convicted of the lesser crimes of common law robbery and second-degree sexual offense; and these convictions render harmless any error with respect to the greater crimes, absent some showing that the verdicts of guilty as to the lesser crimes were affected thereby. No such showing has been made.

(citing *State v. Casper*, 256 N.C. 99, 122 S.E.2d 805 (1961); *State v. DeMai*, 227 N.C. 657, 44 S.E.2d 218 (1947); *State v. Wynn*, 25 N.C. App. 625, 214 S.E.2d 274 (1975); *State v. Sallie*, 13 N.C. App. 499, 186 S.E.2d 667 (1972); and *State v. Keyes*, 8 N.C. App. 677, 175 S.E.2d 357 (1970)). In *Keyes*, this Court held that "[c]onviction of the lesser offense . . . rendered harmless any error with respect to . . . defendant's guilt of the more serious offense, absent some showing that the verdict of guilty of a lesser offense was affected thereby." *Keyes*, 8 N.C. App. at 680, 175 S.E.2d at 359 (citations omitted).

In the instant case, the jury's verdict necessarily means that it rejected Jessica's testimony that Defendant killed the victim with premeditation and deliberation. Defendant has not shown that admission of testimony about specific intent contributed to her conviction of second-degree murder, and our own review reveals no likelihood that admission of this evidence prejudiced Defendant. This assignment of error is overruled.

For the reasons discussed above, we conclude that Defendant had a fair trial, free of reversible error.

No error.

Judges STEPHENS and HUNTER, JR. concur.